Vere R. EWING, Administrator of the Estate of Florence E. Ewing, Deceased, Plaintiff,

v.

LOCKHEED AIRCRAFT CORPORATION, a corporation, General Motors Corporation, a corporation, and Northwest Airlines, Inc., a corporation, Defendants.

No. 4–61 Civ. 221.

United States District Court
D. Minnesota,
Fourth Division.

Feb. 13, 1962.

Charles T. Hvass, Minneapolis, Minn., for plaintiff.

Nathan A. Cobb and Charles A. Bassford, Minneapolis, Minn., for defendant Lockheed Aircraft Corp.

NORDBYE, District Judge.

This cause comes before the Court on plaintiff's motion for an order denying the special appearance of defendant Lockheed Aircraft Corporation herein and for an order determining that this defendant is subject to the jurisdiction of this Court. Defendant Lockheed countered with a motion for dismissal as to it upon the grounds of lack of jurisdiction over its person. Jurisdiction purportedly was obtained over this defendant by service on the Secretary of State of the State of Minnesota pursuant to M.S.A. § 303.13, subd. 1(3), and by personal service on Lockheed's field representative residing within this State.

This cause of action arises out of the Northwest Airline "Electra" crash near Tell City, Indiana, on March 17, 1960. The decedent was a citizen of South Dakota. Defendant Lockheed Aircraft Corporation is a California corporation. Defendant General Motors Corporation is a Delaware corporation and defendant Northwest Airlines, Inc., is a Minnesota corporation. The aircraft involved in the crash was manufactured and assembled by Lockheed, with the engines having been built by General Motors, and it had been sold to and was being operated by Northwest at the time of the crash.

The complaint is brought under the Indiana Wrongful Death Act, Ind. Burns' Ann.Stat. § 2–404, and asserts three causes of action. The first and second causes of action are directed against Lockheed on a breach of warranty theory of liability. The plaintiff alleges that at the time of the sale to Northwest, Lockheed expressly and impliedly warranted and guaranteed to Northwest and through Northwest to its fare-paying passengers, inter alia, that the aircraft was suitable and fit for use as a commercial airplane, and that the aircraft, by reason of the breach of such warranties, crashed. The third cause of action is directed against all of the defendants and alleges negligence in the design, manufacture, assembly and maintenance of the aircraft.

Lockheed has appeared specially and moves the Court to dismiss the action against it upon the ground of lack of jurisdiction over its person. Specifically, the grounds for the motion can be stated as follows: (1) that Section 303.13, subd. 1(3) does not apply to the factual situation present here; (2) that Lockheed does not "do business" in Minnesota so as to subject it to personal jurisdiction; and (3) that if Section 303.13, subd. 1(3) is applied so as to uphold jurisdiction over it, the statute would be a denial of due process and would impose an undue burden on interstate commerce in violation of the Constitution of the United States.

The pertinent portion of M.S.A. § 303.13 is as follows:

"A foreign corporation shall be subject to service of process, as follows:

"(3) If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, * * * such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota * * * to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract * * *."

Under the contract of sale for the Electras between Lockheed and Northwest, Lockheed agreed to provide and did provide a "field service representative" to be stationed at the Northwest offices in Minneapolis to aid Northwest

in the problems arising from the operation, repair and maintenance of the aircraft. Plaintiff contends that since part of the contract was performed in Minnesota, Section 303.13, subd. 1(3) is operative and Lockheed's activities within the State are sufficient to satisfy the "doing business" requirement of "due process".

Lockheed's contacts within the State, so far as the record indicates, were those which arose in connection with the sale, maintenance and repair of the Electras. One of the attorneys for the plaintiff has filed an affidavit herein wherein he states:

"'On or about May 26, 1958, a contract was entered into by and between Northwest Airlines, Inc. and Lockheed Aircraft Corporation, whereby Lockheed sold to Northwest ten aircraft, designated as Lockheed Electras. Prior to that time, Mr. Frank F. Davis, Domestic Sales Manager of Lockheed Aircraft Corporation, had called on Mr. Donald W. Nyrop, President of Northwest Airlines in the Twin Cities, for the purpose of interesting Northwest in certain Lockheed Electras.

"'Northwest Airlines, Inc. paid $2,269,650.00 for each of the Lockheed Electra aircraft. All in all, Lockheed has sold to Northwest approximately eighteen Lockheed Electras.'"

Counsel states that this information was obtained from Mr. A. E. Floan, Vice-President and Secretary of Northwest, and the precise wording was verified by Mr. Floan. The factual situation as set forth in this affidavit is not controverted. However, it is to be gathered from the showing herein that the sale of the Electras constituted a California contract.

Counsel for Lockheed has filed an affidavit with the Court wherein he states:

"Lockheed Aircraft Corporation is a corporation organized and existing under the laws of the state of California. It is not admitted to do business in the state of Minnesota as a foreign corporation. It maintains no bank account in the state of Minnesota. It maintains no stock of goods or parts within the state of Minnesota. Its name is not listed in the telephone directory in Minneapolis or anywhere in the state of Minnesota. It has no office or place of business within the state of Minnesota and no property therein, other than the space occupied by Mr. Thomas P. Sapa and the manuals, office furniture, stationery, and forms of minimal value, which Mr. Sapa uses for his purposes * * *.

"The business of Lockheed Aircraft Corporation is the manufacturing of aircraft at its factory in the state of California. Its practice is to negotiate contracts with airline companies for aircraft to, be manufactured in California. It has no distributors or dealers within the state of Minnesota."

This showing is not contradicted.

The deposition of Mr. Thomas P. Sapa, the field service representative for Lockheed stationed in Minneapolis, reveals the following facts: He is stationed in Minneapolis pursuant to the sales contract for the Electras to Northwest, involving, among others, the airplane in question, and although he regards his being here as temporary, at the time of the service of process herein he had been here two years and four months. His family consisting of his wife and children came here on August 5, 1960. His function seems to be to report to Lockheed any difficulties Northwest was having with the Electras and to aid Northwest in solving such problems. Some 300 to 350 service reports have been made to Lockheed during Mr. Sapa's stay here. He uses one of Northwest's offices to fulfill his duties. He uses his own automobile on Lockheed's business, being paid by Lockheed so much a mile therefor. He has a telephone which is listed in the Northwest directory as

"Lockheed Field Service Representative." There is, however, no listing of Lockheed in the city telephone directory. Lockheed's property at Northwest consists of office supplies, manuals and some office furniture.

Although Mr. Sapa was the sole representative of Lockheed in Minnesota at the time of the service of the summons and complaint herein, at one time after the sale of the Electras, Mr. Sapa had two assistants. One remained here for a year. Mr. Sapa and his assistants receive their salary and expense allowances from Lockheed drawn on a California bank. They communicate from Minneapolis with Lockheed frequently through the mail, telegraph, and by teletype. Mr. Sapa employs a secretary obtained through a Minneapolis employment agency and pays the agency for her services. His function is "in seeing that the customer gets the full benefit out of the Electra" and "to make the reports that [Lockheed] requests." Mr. Sapa rents a home in Minnesota; he owns a house in California which he has rented out while in Minnesota.

The first problem which confronts the Court is whether the situation present here is within the purview of Section 303.13, subd. 1(3), M.S.A. Lockheed argues that the language intended to restrict the benefit of the statute to residents of Minnesota, and further, in that the statute in its contractual features relates to suits by one party against the other based upon such contract, this decedent was not a privy to the contract in question.

The Electra in question was sold to Northwest for the express purpose of transporting passengers therein. Any warranty as to fitness for commercial travel, express or implied, growing out of that contract would inure to the benefit of those who were expected to be carried on the plane for purposes for which it was intended. In other words, the passengers on the plane would stand in privity with Northwest in so far as these warranties are concerned. See Hinton v. Republican Aviation Cor-

poration, D.C.S.D.N.Y., 180 F.Supp. 31, and cases cited therein. The decedent herein was therefore embraced within the ambit of such contract warranties. This proceeding fairly comes within the purview of the statute in so far as it arises from and grows out of the contract between Lockheed and Northwest, a Minnesota resident. Under such circumstances, there is an absence of any justification for concluding that this section of the statute was promulgated solely for the benefit of Minnesota residents. If Lockheed is amenable to service in Minnesota by a Minnesota resident who may have been injured in this fatal accident, no good reason is suggested why a nonresident in a proceeding growing out of the contract should not be accorded the same rights under the statute. Plaintiff's intestate boarded the plane at the Minneapolis-St. Paul airport. If the principles of due process are satisfied, Lockheed would not be absolved from proceedings instituted herein by nonresident passengers; that is, if Lockheed is doing business in this State within the purview of this statute and hence is amenable to service in actions growing out of the contract involving the sale of this Electra, there is no basis for the contention that jurisdiction should be limited to residents. The statute does not so provide and there is an absence of any showing that it was enacted with that intention.

The more elusive problem presented here arises as to whether or not there are sufficient "minimal contacts" of Lockheed in this State to satisfy the due process requirement. Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670. But in that connection it must be emphasized that Lockheed, prior to the consummation of this contract, solicited in Minnesota and consummated in California a contract involving the sale of airplanes totaling some $22,000,000. It was this contract which included the Electra in question and which constitutes the basis for the warranties, the breach of which are relied upon here. The contract, therefore, had substantial connections in this State. McGee v. International Life

Ins. Co., 355 U.S. 220, 78 ·S.Ct. 199, 2 L.Ed.2d 223. And as part of that contract, Mr. Sapa and his assistants were sent to this State as Lockheed's representatives to carry out in Minnesota the phase of the contract which occupied Mr. Sapa's full time here for over two years prior to the service of the summons in this proceeding. Defendant attempts to minimize the importance of Mr. Sapa's duties in this State, primarily because at all times his tenure here was uncertain and his duties were largely limited to aiding and assisting Northwest with its problems in the operation of the Electras and reporting his findings to the home office in California. However, his presence here was an integral part of the consideration for the sale of the Electras, and the fact that he was maintained here by Lockheed for over two years and that one of his assistants was here for approximately one year, tends to emphasize the importance of these field representatives in the furtherance of Lockheed's business in this State. Undoubtedly the primary object of Mr. Sapa's being required to remain in Minneapolis was to assure Lockheed that Northwest would be a satisfied customer. Lockheed's business is to sell airplanes. Northwest is always a prospective purchaser of airplanes from Lockheed. These circumstances weigh heavily in support of the conclusion that subjecting Lockheed to the jurisdiction of this Court does not offend the "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95.

It is, of course, true that the contacts of Lockheed in this forum did not give rise to the cause of action which is involved herein. In other words, there is no causal connection between the portion of the contract to be performed in Minnesota and the accident which occurred at Tell City, Indiana. Mr. Sapa is not charged with any failure to perform his duties as Lockheed's field representative in Minnesota. It may well be that plaintiff's jurisdictional position would be stronger if this cause of action resulted from "activities of the defendant within the state." Dahlberg Company v. Western Hearing Aid Center, 259 Minn. 330, 107 N.W.2d 381. However, the so-called single act statute of this State does not require that the cause of action must result from the foreign corporation's activities herein; if the contract in question with Northwest is performed in whole or in part in this State and the cause of action arises therefrom—that is, the contract with its warranties—then jurisdiction may be obtained over Lockheed if the showing in support thereof comports with due process.

Here, we do not have the mere isolated performance of an incidental phase of a contract within this State. On the contrary, the portion of the contract to be performed here required the residence and activities of Lockheed's representatives to be extended over a prolonged period in furtherance of a contract with a Minnesota resident involving some $22,-000,000. The activities of Lockheed over some two years in continuance have had the protection and benefits of Minnesota laws and it should not be permitted to escape jurisdiction upon the theory that to defend this lawsuit in this forum would impose an undue burden on interstate commerce.

The Court is not unmindful of the caveat indicated in Hanson v. Denckla, 357 U.S. 235, 250, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, that the "trend of expanding personal jurisdiction over nonresidents" as indicated in McGee v. International Life Ins. Co., supra, must nevertheless have for its prerequisite sufficient minimal contacts of the foreign corporation within the State so as not to "offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, supra. Nevertheless, the factual situation here would seem to indicate activities on the part of Lockheed which are fully compatible with the requirements of due process.

It follows from the foregoing that plaintiff's motion for an order denying the special appearance herein of the de-

 

fendant Lockheed must be, and hereby is, granted, and the Court finds that Lockheed is subject to the jurisdiction of this Court. It is so ordered. An exception is allowed.