Irving H. Saypol, J.
In this wrongful death action in which two causes -of action are alleged, the first in negligence and the second in breach .of implied warranty, the defendant moves for an order dismissing both causes for failure to .state a cause of action. Death occurred lin Massachusetts on July 18,1964. This action was commenced on July 18, 1966. The Massachusetts wrongful death act creates a cause of action for negligence and provides a limitation period of one year as a condition precedent to the right to sue and a limitation on the recovery of damage. Accordingly, defendant urges that maintenance of the action is time-barred, no cause for wrongful death based on contract exists and, in any event, lack of privity precludes assertion of the second cause. Plaintiff urges that New York public policy restricts application of the Massachusetts death act at least as to damage limitation (Kilberg v. Northeast Airlines, 9 N Y 2d *311 34); that New York law applies to the entire action under New York’s present choice of law doctrine (Babcock v. Jackson, 12 N Y 2d 473); ¡and that privity of contract in the circumstances here is no longer required (Goldberg v. Kollsman Instrument Corp., 12 NY 2d 432).
Plaintiff is the widow of the deceased and was and now is a New York domiciliary. Decedent lived in New York with his family and was employed here as an engineer. Defendant is a Delaware corporation doing business here and has its principal executive offices here. Thus the deceased and the beneficiaries of this action are a concern of the State.
Decedent lost his life in .the State of Massachusetts after ejecting from a jet plane which he was piloting while on active Federal duty and subject to United States military law at the time of death, which, to some extent at least, dilutes Massachusetts interest. He was piloting a plane in the service of the United States Air Force.
His mission encompassed flying from Bar neis Airport in West-field, Massachusetts, returning to that port for refueling and then to .Stewart Air Force Base in New York, the termination point. It is asserted that Captain Paris was induced to participate with the squadron by arrangement to fly his airplane out of Stewart Air Base in New York each month to enable him to acquire his monthly flying time locally in New York, without being away from his family, which he had done on prior occasions and on the occasion in suit. In each instance, the flight was to terminate in New York. The fatal flight was 1 hour and 15 minutes, of which 10 minutes of the flying time was performed in or over the air space of Massachusetts. The major portion of the flight was over New Jersey, Connecticut, and New York. The happening in Massachusetts was thus fortuitous.
Plaintiff instituted an action in the Federal jurisdiction against North American Aviation Inc., the manufacturer of the jet aircraft. That action is pending. The defendant there denies liability for the engine of that aircraft, the manufacture and design of which is the subject of complaint here. It was manufactured and designed by this defendant. It was not supplied by defendant to North American, although the latter assembled the entire plane. The engine was sold by this defendant to the United States Government.
In Kilberg v. Northeast Airlines (9 N Y 2d 34, supra) a second cause was stated based on breach of contract of carriage. The flight was from New York to Nantucket, Massachusetts, where there was crash and death. The Massachusetts death act limits damage to a maximum of $15,000 (Mass. Gen. Laws, ch. 229, *312 § 2). Relying on Dyke v. Erie Ry. Co. (45 N. Y. 113) Special Term 'sustained the cause in contract and applied the New York law. The flight ticket was purchased at La Guardia Air Field. On appeal, the Appellate Division determined the second cause to be in tort and that the Massachusetts death act must he applied. On appeal to the Court of Appeals, that court stated that a wrongful death action is 'statutory and the statute of the State of the place of wrong governs, and, further, that plaintiff’s right to sue is not in contract (Webber v. Herkimer & Mohawk St. R. R. Co., 109 N. Y. 311) but only in negligence under the Massachusetts -statute. However, the Court of Appeals went on, the place of injury being fortuitous in modern air travel, the monetary limitation becomes unjust and anomalous. New York public policy strongly inhibits limitation in this area. The New York .State Constitution since 1894 has- prohibited abrogation of the right of action with respect to recovery of damage for ■injury resulting in death ,as it then existed and the amount recoverable shall not be subject to any statutory limitation. The limitation, at least as to- New York domiciliarles, was prohibited as against public policy, warranting rejection of the damage provision of the Massachusetts statute, although plaintiff is-required to sue on that statute. The restriction as. to damage pertains to remedy rather than the right (Wooden v. Western N. Y. & Pa. R. R. Co., 126 N. Y.10, 16), as to which the law of the forum prevails. The conclusion reached was that the contract action, based as it was on' the Massachusetts act, was demurrable; but -since the first cause was in negligence and not demurrable, leave was granted to replead -it so as to allege damage in accordance with the rule as enunciated.
Kilberg was -based on strong public policy -and prohibited only limitation of recovery as a matter of procedure and remedy; this was again emphasized in Davenport v. Webb (11 N Y 2d 392) where wrongful death occurred in Maryland. There, plaintiff endeavored to add to the- judgment pre-judgment interest upon the -strength of the Kilberg case. But damage as to prejudgment interest was held to be inseparable from the substance and not recoverable and not the -subject of strong public policy.
However, the Court of Appeals, in Babcock v. Jackson (12 N Y 2d 473, supra) continued the judicial surgery in its approach to the application as a matter of substance of a foreign wrongful death act. There, plaintiff joined her friends, Mr. and Mrs. Jackson, all residents of Boches-ter, New York, and left that city in Mr. Jack-son’s -automobile. She was a guest for a weekend trip to Canada when, hours 'after departure, Mr. Jackson apparently lost control of the vehicle. Subdivision (2) of sec *313 tion 105 of the 'Highway Traffic Act of the Province of Ontario, provides that: ‘ ‘ the owner or driver of a motor vehicle, other than a vehicle operated in the business of carrying passengers for compensation, is not liable for any loss or damage resulting from bodily injury to, or the death of any person being carried in * * * the motor vehicle.” Defendant moved to dismiss the complaint upon the ground 'that the action was not maintainable under the law of the place of the. injury. At Special Term, the motion was granted and the Appellate Division affirmed. The Court of Appeals put the question as (p. 477): “ Shall the law of the place of the tort invariably govern the availability of relief for the tort or shall the applicable choice of law rule- also reflect a consideration of other factors which are relevant to the purposes served by the enforcement or denial of the remedy ? ”
It then answered the question stating (pp. 478, 479, 480, 484): “ More particularly, as applied to torts, the theory ignores the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues. * * * In Auten v. Auten (308 N. Y. 155), however, this court abandoned such rules and applied what has been termed the ‘ center of gravity ’ or ‘ grouping of contacts ’ theory of the conflict of laws. * * * Realization of the unjust and anomalous results which may ensue from application of the traditional rule in tort cases has also prompted judicial search for a more satisfactory alternative in that area. * * * The emphasis in Kilberg was plainly that the merely fortuitous circumstance that the wrong and injury occurred in Massachusetts did not give that State a controlling concern or interest in the amount of the tort .recovery as against the competing interest of New York .in providing its residents :or users of transportation facilities there originating with full compensation for wrongful death. Although the Kilberg case did not .expressly adopt the 1 center of gravity ’ theory, its weighing of the contacts or .interests of the respective jurisdictions to determine their bearing on the issue of the extent of the' recovery is consistent with that approach. (See Leflar, Conflict of Laws, 1961 Ann. Sur. Amer. Law, 29, 45.) * * * In conclusion, then, there is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction. Where the issue involves standards of conduct, it is more .than likely that it is the law of the place of the tort which will be controlling but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which *314 has the .strongest interest in the resolution of .the particular issue presented.”
In Dym v. Gordon (16 N Y 2d 120) the plaintiff and defendant were New York domieiliaries. The accident occurred in the State of Colorado. They did not travel to Colorado together but met there, where after a hoist-guest relationship arose, a collision occurred between the vehicle operated by the host and another vehicle. Colorado law was applied on the facts. That case is entirely 'distinguishable from this.
In Goldberg v. Kollsman Instrument Corp. (12 N Y 2d 432, 434-435, supra) leave to appeal to the Court of Appeals was granted: “We granted leave to appeal in order to take another step toward a complete solution .of the problem partially cleared up in Greenberg v. Lorenz (9 N Y 2d 195) and Randy Knitwear v. American Cyanamid Co. (11 N Y 2d 5) (both decided after the making .of the Special Term and Appellate Division orders here .appealed from). The question now to be answered is: does a manufacturer’s implied warranty of fitness of his product for its contemplated use run in favor of all its intended users, despite lack of privity of contract? ” That, too, was a death action, death resulting from injuries suffered in a crash near La Guardia Airport, New York City, of an airplane which was assembled by Lockheed Aircraft Corporation, defendant Kollsman being the manufacturer of the altimeter. The court there stated (pp. 436-437): “ A breach of warranty, it is now clear, is not only a violation of the sales contract out of which the warranty arises but is a tortious wrong suable by a noncontracting party whose use of the warranted article is within the reasonable contemplation of the vendor or manufacturer. As to foodstuffs we definitively ruled in Greenberg v. Lorenz (9 N Y 2d 195, supra) that the persons thus protected and eligible to sue include the purchaser’s family. We went no further in that case because the facts required no farther reach of the rule. * * * MacPkerson and its successors dispelled the idea that a manufacturer was immune from liability in tort for violation of his duty to make his manufactures fit and safe. In MacPherson’s day enforcement required a suit in negligence. Today, we know from Greenberg v. Lorens, Randy Knitwear v. American Cyanamid Co. (supra) and many another decision in this and other States (see, for instance, Henningsen v. Bloomfield Motors, 32 N. J. 358, and Thomas v. Leary, 15 A D 2d 438) that, ait least where an article is of .such a character that when used for the purpose for which it is made it is likely .to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable for breach of *315 law-implied warranties, to the persons whose use is contemplated. The MacPherson holding was an ‘ extension ’ of existing court-made liability law. In a sense, Greenberg v. Lorenzs and Randy Knitwear v. American Cyanamid Co. (supra) were extensions in favor of noncontracting consumers. But it is no extension at all to include airplanes and the passengers for whose use they are built — and, indeed, decisions are at hand which have upheld complaints, sounding in breach of warranty, against manufacturers of aircraft where passengers lost their lives when the planes crashed (see, e.g., Conlon v. Republic Aviation Corp., 204 F. Supp. 865; Middleton v. United Aircraft Corp., 204 F. Supp. 856; Ewing v. Lockheed Aircraft Corp., 202 F. Supp. 216; Hinton v. Republic Aviation Corp., 180 F. Supp. 31). * * * How,ever, for the present at least we do not think it necessary •so to extend this rule as to hold liable the manufacturer (defendant Ejollsman) of a component part. Adequate protection is provided for the passengers by casting in liability the airplane manufacturer which put into the market 'the completed aircraft. ’ ’ Here, as already indicated, the engine was not supplied by the defendant to North American and in turn supplied by North American as ¡a part of the entire plane and as a part of its obligation, since it appears that defendant sold the engine to the United States Government. In addition, it is reasonable to consider that the engine is in all respects factually and legally an entity separate from the plane as such, except for its assembling.
Accordingly, in pursuance of the advances made with respect to State concern and center of interest and privity of contract, the court reaches the conclusion that the action is in all respects maintainable as to both causes.
The motion is denied.