R. Dee COZZENS, Administrator of the Estate of Mary Jo Moncur, Deceased; and Konrad Keller, Executor of the Estate of Vernon W. Moncur, Appellants (Plaintiffs below),

v.

PIPER AIRCRAFT CORP. et al., Appellees (Defendants below),

Laramie Aviation, Inc. (Defendant below).

No. 4181.

Supreme Court of Wyoming.

Oct. 19, 1973.

F. M. Andrews, Jr., Riverton, and James P. Castberg, Powell, for appellants Cozzens and Keller.

Edward E. Murane of Murane, Bostwick, McDaniel, Scott & Greenlee, Casper, for appellee Piper Aircraft Corp.

George F. Guy of Guy, Williams & White, Cheyenne, for appellees Avco Corp., The Bendix Corp., and Rajay Industries, Inc.

Arthur Kline, Cheyenne, for appellee Hartzell Propeller, Inc.

W. A. Swainson of Swainson and Swainson, Cheyenne, for appellee Ox Bow Ranch, Inc., d/b/a Montana Piper Distributors.

Before. PARKER, C. J., and McEWAN, GUTHRIE and McINTYRE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Appellants seek reversal of the ruling of the trial court sustaining a motion to dismiss their actions against six foreign corporations joined as defendants herein upon the basis that the Wyoming court lacked jurisdiction and that proper service had not been obtained upon them.

Appellant Cozzens, as administrator of the estate of Mary Jo Moncur, deceased, and Konrad Keller, as executor of the estate of Vernon W. Moncur, deceased, filed suits against defendants seeking to recover for the deaths of the Moncurs occasioned by an airplane accident which occurred October 17, 1969, near Greeley, Colorado. These suits were consolidated for trial and purposes of disposal.

Vernon W. Moncur and his wife, Mary Jo Moncur, were on their way to Albuquerque, New Mexico, from their home in Wyoming and stopped at Laramie where they filled the plane with gasoline purchased from Laramie Aviation which was alleged to have contained water. Laramie Aviation was joined as a defendant and no question is raised as to the sufficiency of service or jurisdiction as to it so there will be no further mention of that defendant.

Defendants Piper Aircraft Corp., Rajay Industries, Inc., Hartzell Propeller, Inc., and Ox Bow Ranch, Inc., d/b/a Montana Pipe Distributors, are all foreign corporations not registered or licensed to do business in this State. Plaintiffs sought to make service and secure jurisdiction of these corporations under the provisions of § 17–36.104, W.S.1957, C.1965, of the Wyoming Business Corporation Act, or under the provisions of § 5–4.3, W.S.1957, 1973 Cum.Supp., of the so-called "Long-Arm Statute." The trial court dismissed this action as against all of these defendants. A determination of the propriety of such ruling rests in the facts and the application of the statutes mentioned. The activities of each of such defendants in this State will be summarized as follows:

## PIPER AIRCRAFT CORPORATION

Piper Aircraft is engaged in the manufacture of aircraft at Lock Haven, Pennsylvania, and Vera Beach, Florida, and was the manufacturer of the plane which crashed. In the Rocky Mountain area its products are distributed by three independent corporations: The Atlas Corporation of Denver, which has a dealer in Cheyenne; Piper Montana Distributors of Billings, which services Big Horn Airways of Sheridan and Powell Aviation; Intermountain Piper, Inc., of Salt Lake City, which has a Wyoming dealer in Rock Springs. The total sales in the area during the five-year period from 1967 through 1971 varies from $4,069,152 in 1968 to $1,309,760 in 1967. The amount of its

business transactions in 1969, the year of this accident, was $2,703,360. However, there is no way from this record that the amount of sales in this State can be determined, as these figures are for the entire area. The company does advertise its products nationally, supplies newsletters and service bulletins to owners, mechanics, and service centers, and will, if requested, supply any interested party with its newsletters and service bulletins. There were at the time of the hearing 202 registered Piper owners in the State. At the time Moncur purchased his plane from Ox Bow, Ox Bow delivered a bill of sale to Moncur. Piper, sixty-six days after the sale to Moncur, executed an instrument confirming title in Ox Bow, which was delivered to Moncur. There is no showing that Piper had any property in Wyoming or of any direct business activity in this State, nor that Piper ever made any direct sales or deliveries in this State.

## AVCO CORPORATION

It is a Delaware corporation and a manufacturer of engines of the kind used in the plane at the time of the accident and was the manufacturer of the engine therein. This company has manufacturer's representatives in Denver and Salt Lake City, over whom they exercise no control. There is no evidence of solicitation of business by the corporation. Avco shipped engines and parts into this State in 1966 and 1967 of a value of $262,761, principally to one firm, and in 1969 products worth $1002 were shipped into Wyoming. There is no other evidence of any activity of this corporation.

## THE BENDIX CORPORATION

This is a modern corporate conglomerate, incorporated in Indiana, engaging in various activities through different divisions and has four salesmen representing various lines who solicit business in Wyoming. It advertises its products nationally. Although they appear rather irregularly and infrequently, there is some indication that some of the salesmen appear every two months in this State on company business. Bendix does ship goods to customers in Wyoming. During the years 1967 through 1971 this has ranged from a low of $86 in 1970 to a high of $9250 in 1971. The corporation has an independent distributor in Casper.

## RAJAY INDUSTRIES, INC.

Rajay, a Texas corporation, has for the past five years solicited business in Wyoming through direct mail brochures and magazine advertising. A salesman for the company made personal calls in Wyoming on five different occasions in the years 1969 through 1970—this for the purpose of solicitation of sales of their aircraft products. The record indicates there were fifteen separate transactions with five persons during the period from 1969 through 1971. The total value of all of these sales was $6057.27.

## HARTZELL PROPELLER, INC.

Hartzell is an Ohio corporation. There is nothing in the record to indicate any activity other than the defendant did ship propellers into the State of Wyoming upon orders during the years 1966 through 1970, inclusive, being eighteen shipments aggregating a total value of $33,850.04 with a low yearly total of $66.84 to a high yearly total of $29,115.40. These were largely to one customer. There is no evidence of solicitation of business.

## OX BOW RANCH, INC., d/b/a MONTANA PIPER DISTRIBUTORS

Ox Bow is a Montana corporation and the seller of the aircraft involved in this accident. There is no contention that this plane was either purchased or delivered in Wyoming. We find no evidence of sales or business in this State, although it has shipped goods into the State of Wyoming for the past five years consisting largely of aircraft parts to fourteen customers in this State. The only form of solicitation shown is newspaper advertisements published in Billings, Montana.

This court has heretofore in some length dealt with the question of the sufficiency of the activities of a foreign corporation which will subject such corporation to service of process and jurisdiction under § 17–36.104. The case of Ford Motor Company v. Arguello, Wyo., 382 P.2d 886, 896, holds that each case must be decided upon its individual facts. It establishes certain guidelines within which this should be determined, saying:

"* * * It seems clear, however, that the term would not embrace casual, isolated, or sporadic transactions of limited duration and extent but beyond that the matter must be 'determined largely according to the facts of each individual case.' * * *"

■ This case offers a factual difference not present in a large number of the cases which have been examined and which are distinguishable because the accident occurred not in this State but in Colorado. This is not in itself decisive and this action could be maintained in this State if the proper showing of minimal contact can be made, Singer v. Walker, 21 A.D.2d 285, 250 N.Y.S.2d 216, 221, certiorari denied 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158; Ewing v. Lockheed Aircraft Corporation, D.C.Minn., 202 F.Supp. 216, 217. However, when the cause arises in another state the activities of the foreign corporation must be substantial to satisfy the requirements of minimal contact, Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 419, 96 L.Ed. 485, rehearing denied 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332; Fisher Governor Company v. Superior Court of City and County of San Francisco, 53 Cal.2d 222, 1 Cal.Rptr. 1, 347 P.2d 1, 3, and cases cited. International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057, being the progenitor of the Long-Arm Statutes and the basis for the view of expanding jurisdiction, has particular application in this case when jurisdiction is asserted on the concept of transaction of business. That case indicates the necessity of a nonresident inten-

tionally and purposefully engaging in business activities so that it enjoys the "benefits and protection of the laws of that state," 66 S.Ct. at 160. Engagement in such activities gives rise to an obligation and responsibility for the consequences of the activities. The importance of this view is emphasized by its reiteration in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283, rehearing denied 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92, where the court said:

"* * * The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. * * *"

Hanson extends a caveat, 78 S.Ct. at 1238, that International Shoe does not eliminate all restrictions on personal jurisdiction of State courts, clearly indicating the ever pervasive shadow of due process beyond which we cannot go.

■ The factual situation herein does not disclose any purposeful availment by these defendants or any of them of the privilege of conducting business in Wyoming, and further reveals the defendants and all of them engaged only in "casual, isolated or sporadic transactions of limited duration and extent," Ford Motor Company v. Arguello, supra, and that these activities were not of such substantial nature and character that they showed minimal contacts which would justify an assumption of jurisdiction under § 17–36.104 under the concept of "traditional notions of fair play and substantial justice," International Shoe Company v. State of Washington, supra, and cases cited therein. It has been noted that jurisdiction is more difficult to obtain under the concept of "doing business" than over a nonresident tort-fea-

sor under the Long-Arm Statute, Texair Flyers, Inc. v. District Court, First Judicial District, Colo., 506 P.2d 367, 370.

This, however, does leave for determination the question of the propriety of such service and jurisdiction under § 5-4.2(ii), W.S.1957, 1973 Cum.Supp., of the so-called "Long-Arm Statute." If Wyoming courts could acquire jurisdiction of this suit the factual situation must bring it therein. The distinctions between these two statutes are implicit upon their face, the General Business Corporation Statute, providing as it does that service may be made of any process if such corporations shall do business in this State without qualifying, as contrasted to the so-called "Long-Arm Statute," which is self-limiting upon its face to a claim for "relief arising from the acts enumerated in this section." If the cause did not arise from the activities of the defendants in Wyoming they are not amenable to service under the Long-Arm Statute, Florida Towing Corporation v. Oliver J. Olson & Co., 5 Cir., 426 F.2d 896, 901; Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, 852, certiorari denied 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266.

■ The so-called "Long-Arm Statute" recognizes and implements a new concept of securing jurisdiction over foreign corporations, Orton v. Woods Oil and Gas Co., 7 Cir., 249 F.2d 198, 201. This is also recognized in the statute which begins as follows: "In addition to all other bases of jurisdiction," § 5-4.2(a), W.S.1957, 1973 Cum.Supp., and it is under this statute that the appellants must sustain their claim to jurisdiction.

■ Appellants rely upon the first three subsections of § 5-4.2(a), as follows:

"(i) transacting any business in this state;

"(ii) contracting to supply services or things in this state;

"(iii) causing tortious injury by an act or omission in this state;"

To facilitate an understanding of this contention we will set out summarily the nature of this and its basis as follows:

Negligence in the assembly and manufacture of the plane and its component parts.

Negligence in the defendants in design so that the airplane was not airworthy and did not comply with certain regulations of the Federal Aviation Administration.

Plane was secured under an implied warranty of fitness for the purpose for which it was used and reliance upon the skill and judgment of the defendants in securing a plane suitable for their purposes, and an express warranty of freedom from defects.

What has been said before with regard to doing business in the State need not here be repeated but its applicability is clear. Further, when it is sought to establish jurisdiction on the basis of the Long-Arm Statute, under the first provision of the statute, paragraph (b) thereof comes into play and such business alleged to have been done in this State and which would confer jurisdiction on the court must have been such activity as was related to the negligence of which complaint is made. Neither the manufacture nor design of the plane or any of its component parts was accomplished in Wyoming nor could they be said to be any part of any transaction which is shown to have taken place in this State. Avco, Bendix, Rajay, and Hartzell were in no manner at any time involved in any transactions in this State with Moncur or his wife. Piper had no dealings in Wyoming with them, although there was delivered to Moncur sometime after the purchase of the plane a bill of sale from Piper to Ox Bow. This merely confirmed the title of the plane in Ox Bow, who had theretofore conveyed title to Moncur and so Piper cannot be said to have been a party or in any manner involved in any dealings with Moncur. This bill of sale was evidence of some transaction between Piper and Ox Bow consummated outside of this State with a Montana corporation. The plane was not sold or the delivery thereof was not made in Wyoming and there is nothing before us to indicate that

any of the business transacted by the defendants or any of them in this State was in any manner related to the claim, and jurisdiction cannot be based thereon.

Appellants assert and argue that by virtue of the written and implied warranties under the Uniform Commercial Code, §§ 34–2–314, 34–2–315, and 34–2–318, W.S. 1957, 1973 Cum.Supp., that Piper particularly is subject to our jurisdiction by virtue of having contracted "to supply services or things in this state," § 5–4.2, W.S.1957(ii).

The complaint alleges knowledge of the use to which the purchasers would put the airplane and that the defendants had warranted the plane and the products to be fit for that purpose and that Moncur relied thereon; that he was induced to buy the plane by the representatives of Piper; that it could be used in complete safety; that Moncur had relied upon the skill and judgment of the defendants; that Piper and Ox Bow gave an express warranty of the aircraft against any defects; and that injury occurred as a result of the breach of this warranty. There is no word in the complaint or by other showing that Piper or any of the parties claimed to have warranted this aircraft and component parts and that they agreed to perform any services or supply anything of any character in the State of Wyoming, and the claim is not based upon such contract.

Appellants cite Ewing v. Lockheed Aircraft Corporation, D.C.Minn., 202 F.Supp. 216, and Williams v. Connolly, D.C.Minn., 227 F.Supp. 539, with the assertion that these cases hold that a product warranty is sufficient to confer jurisdiction. Neither case so holds nor are they applicable to the factual situation herein. A fair summary of the holding in Ewing would be that a warranty growing out of a contract with a manufacturer of a commercial airplane inures to the benefit of a paying passenger of the purchaser. The factual situation in that case involved not only a warranty but the performance of substantial services for a prolonged period of time by the field representative of the manufacturer. The

court noted that this activity created the necessary "minimal contact." To hold that such warranty standing alone would create jurisdiction under this provision of the statute would pass the bounds of due process and offend this provision by ignoring the usual elements of minimal contact, Ford Motor Company v. Arguello, supra; Phillips v. Anchor Hocking Glass Corporation, 100 Ariz. 251, 413 P.2d 732, 19 A.L. R.3d 1; International Shoe Company v. State of Washington, supra; McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

In connection with the third provision under which appellants assert jurisdiction the record simply does not sustain any claim that the defendants or any of them caused a tortious injury by an act or omission in this State and no effort is made by appellants to demonstrate any such claimed act.

■ Appellants strongly urge and argue that the inconvenience and difficulties of recovery in this suit, unless they are allowed to bring it in this forum, because of the varying residences of the defendants involved and their places of business, would justify this court in supplying them with a forum. Jurisdiction is based upon the activities of the defendants and not the activities and exigencies of the plaintiffs, and the convenience of the plaintiffs does not remove the necessity of "minimal contact," Webb v. Stanker and Galetto, Inc., 84 N.J.Super. 178, 201 A.2d 387, 391–392, certiorari denied 380 U.S. 907, 85 S.Ct. 888, citing Hanson v. Denckla, supra.

It is to be further observed that Colorado, the scene of the accident has a Long-Arm Statute, § 37–1–26, Colo.Rev.Stat. 1963, 1965 Perm.Cum.Supp., so that plaintiffs are not without a forum in which they might secure a remedy.

The order of the trial court is affirmed.

McCLINTOCK, J., was not a member of the court at the time of the hearing of this case and took no part in this disposition.