**Leonard E. LEFF et al., Plaintiffs,**

v.

**Jerry BERGER, Jr., also known as Jerome J. Berger, Defendant.**

**No. C74–85.**

United States District Court,
D. Wyoming.

Oct. 29, 1974.

David H. Carmichael, of Hanes, Carmichael, Johnson, Gage & Speight, Cheyenne, Wyo., appearing as counsel for plaintiffs.

Michael W. McCall, of Borthwick & McCall, Cheyenne, Wyo., appearing as counsel for defendant.

*Judge's Memorandum*

KERR, District Judge.

Plaintiffs have brought this action to recover amounts due on a lease entered into with them by the defendant. In 1961, defendant entered into a lease for a term of ten years. As lessee, Berger agreed to pay a monthly rental of approximately $557.00. Under paragraph 6 of the lease, defendant was permitted to assign his interest as lessee to Jerry Berger Realty, Inc., "[P]rovided, however, that lessee shall remain personally liable for all obligations provided herein." Lessors did have the option of declaring the term of the lease at an end if the monthly payments were delinquent. Defendant left the State of Wyoming in July 1962, apparently, without obtaining any release of his obligations under the lease. It does not appear that the defendant has returned to or resided in Wyoming since his departure, and is now a citizen of the State of Illinois. The defendant has moved to dismiss and quash service of process and return. Although termed a "special appearance," which has been abolished as a procedure in federal court, it will be treated as a motion to dismiss pursuant to Rule 12(b), Fed.R.Civ.P.

As grounds for dismissal, defendant alleges that he is not subject to service of process within the District of Wyoming, being a resident, inhabitant and citizen of the State of Illinois; that he is not transacting business in the State of Wyoming; and that he does not have an interest in, use or possess the real property described in the complaint. Service of the summons and complaint was made on the defendant by registered mail. The gist of the matter is whether this Court has jurisdiction over the defendant.

"The foundation of jurisdiction is physical power," wrote Mr. Justice Holmes in 1917. See McDonald v. Mabee, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608 (1917). In a no small concession he went on to say, "No doubt there may be some extension of the means of acquiring jurisdiction beyond service or appearance, but the foundation should be borne in mind." Id. The eminent Justice was in a sense merely paraphrasing a rigid rule enunciated in Pennoyer v. Neff, 95 U.S. 714, 720, 5 Otto 714, 24 L.Ed. 565 (1877) wherein the Court dictated that "The authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established. Any attempt to exercise authority beyond those limits would be deemed . . . an illegitimate assumption of power. . . ." Defendant has relied heavily on this case as support for his argument that the Court lacks jurisdiction as there is no "physical power" over his person.

Yet, it is hardly disputable that this blunt physical power doctrine has been undermined by fictional concepts. Such fictions as "consent, implied or express," "presence," "doing business," and others have been employed by the Courts and legislatures to extend jurisdiction beyond territorial or political boundaries. Examples of such legislation are the nonresident motorist statutes enacted to protect injured plaintiffs wherein the fiction is employed that the nonresident motorist is deemed to have appointed a state official for the service of process. The Supreme Court, in Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927) upheld the constitutionality of such statutes on the grounds that the nonresident motorist's use of the highways amounted to an "implied consent" to have the state official serve as agent for the service of process and that automobiles were dangerous vehicles. This latter aspect—that the doing of an act within a state may render a party liable to the jurisdiction of that state's courts —was re-emphasized in Olberding v. Illinois Cent. R.R., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953) wherein the Court held that consent was not a prerequisite to the exercise of extra-territorial jurisdiction. The gradual evolution and convolution of the principles enunciated in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, above, continued. The

benchmark decision was rendered in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There the Court said that the due process clause "[D]oes not contemplate that a state may make binding a judgment *in personam* against an *individual* or corporate defendant with which the state has no contacts, ties, or relations." Above at 319, 66 S.Ct. at 160. What did the due process clause contemplate? Certain principles may be extracted from the opinion which indicate the breadth of the clause. First, judicial jurisdiction depends upon reasonableness, that is to say, the reasonableness of requiring defense of the particular suit in the state. Due process "[R]equires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S. Ct. at 158. Second, that due process permits judicial jurisdiction to extend to "continuous and systematic" activities within a state which give rise to the liabilities sued on and also to "occasional acts . . . because of their nature and quality . . . may be deemed sufficient" to render the actor liable. International Shoe v. Washington, 326 U.S. at 317, 318, 66 S.Ct. at 159, above. Third, that due process requires an analysis of the quality of the acts, rather than quantity, in relation to the fair administration of the laws and, that each case must be viewed independently and decided on its own facts. Thus the rigidity of Pennoyer v. Neff had evolved to the flexibility of the International Shoe precepts. Further extension of this flexibility resulted in Travelers Health Ass'n. v. Virginia ex rel. State Corp. Comm'n., 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) where service by registered mail and jurisdiction of the Court were upheld based upon the state's interest in enforcing its laws. In Perkins v. Benguet Consolidated Mining

Company, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) the Court upheld the exercise of jurisdiction despite the fact that the cause of action did not arise in the forum and was unrelated to business activities carried on in the state. In the far-reaching decision of McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) the Court, at 223, 78 S.Ct. at 201, said, "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State," and went on to indicate that minimal contacts with the forum state may be the basis for in personam jurisdiction. These jurisdictional bases are not without limit as the Court made clear in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) wherein the Court said, "In McGee the Court noted the trend of expanding personal jurisdiction over nonresidents . . . But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." 357 U.S. at 250, 251, 78 S.Ct. at 1238. The Court went on to formulate the test of whether a nonresident has subjected himself to in personam jurisdiction as follows, "[A] defendant may not be called upon to do so [answer] unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 251, 253, 78 S.Ct. at 1238. Underlying all of these decisions is that principle of natural justice that personal service or that substitute most likely to reach defendant, be made. See McDonald v. Mabee, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1916).

As a result of the above decisions, the various states used their police powers to enact statutes asserting jurisdiction based not only on the operation of auto-

mobiles within a state but also on engaging in a variety of other activities or enterprises. These so-called "long-arm" statutes have been criticized as examples of legislative self-interest which benefit the forum's citizens at the expense of citizens of other states. See Currie, The Growth of the Long Arm, 1963 U.Ill.L. F. 533. They are generally designed to extend jurisdiction to the constitutional limit, and are a useful procedure in today's mobile society where modern means of communication and travel have dissipated many of the arguments against requiring a defendant to answer to a suit.

 Wyoming has enacted a "long-arm" or "single-act" statute. That it is intended to extend state court jurisdiction to the constitutional limit is seen by the following language from the general statement of legislative purpose, Ch. 237, Wyo.Sess.Laws 689 (1967):

"An Act to increase the protection which Wyoming's courts can provide its citizens, by enlarging the personal jurisdiction of Wyoming courts over persons outside Wyoming and providing additional methods of service of process."

As enacted, Wyo.Stat. § 5–4.2 (Cum. Supp.1973) provides in part as follows:

"(a) In addition to all other bases of jurisdiction otherwise authorized or provided by law, any court of this state may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(i) transacting any business in this state

. . . . .

(v) having an interest in, using, or possessing real property in this state . . . "

Service of process by registered mail, return receipt, was made on the defendant pursuant to rule 4, Wyo.R.Civ.P. This Court, of course, is bound to follow state court decisions on amenability to suit of a defendant in this diversity ac-

tion, resorting to federal law only to determine if the claim is offensive to due process. See Arrowsmith v. United Press International, 320 F.2d 219 (2nd Cir. 1963); Walker v. General Features Corp., 319 F.2d 583 (10th Cir. 1963). In this respect, attention is drawn to two Wyoming cases in particular, Ford Motor Company v. Arguello, 382 P.2d 886 (Wyo.Sup.Ct.1963); and Cozzens v. Piper Aircraft Corp., 514 P.2d 1375 (Wyo.Sup.Ct.1973). In *Ford Motor Company,* the Wyoming Supreme Court there employed the "minimal contacts" test and found that the Ford Motor Company was subject to its jurisdiction. The Court might venture to say that the "contacts" were indeed minimal in comparison to the contacts of defendant in this matter. In *Cozzens,* an action was brought against several foreign corporations for wrongful death occasioned by an airplane crash in Colorado. Without further elaboration of the Court's opinion, it found the corporations not susceptible to suit in Wyoming, saying in part:

"However, when the cause arises in another state the activities of the foreign corporation must be substantial to satisfy the requirements of minimal contact . . . International Shoe Company v. Washington . . . [I]ndicates the necessity of a nonresident intentionally and purposefully engaging in business activities so that it enjoys the 'benefits and the protection of the laws of that state.' "

The Court found there was no purposeful engaging in business or availment of the laws of Wyoming, and in affirming the dismissal concluded:

"Jurisdiction is based upon the activities of the defendants and not the activities and exigencies of the plaintiffs, and the convenience of the plaintiffs does not remove the necessity of 'minimal contact' . . . "

 In considering this motion, the Court takes all facts alleged as true. In so doing it is to be noticed that the

property is located in Wyoming, and the lease was executed within Wyoming. Also, the defendant apparently organized Jerry Berger Realty, Inc. under the laws of the State of Wyoming. Any witnesses to the lease, if any are needed, would probably be found in Wyoming. As lessee, the defendant had an interest in the premises. "The tenant in a landlord-tenant situation while he has an interest in land has no . . . title in the land." 3 G. Thompson, Real Property § 1015 p. 2 (1959). As a tenant, he was in possession of and using the real estate. Thus it appears that defendant has had those "minimal contacts," the action arising directly therefrom, with this forum such that maintenance of the suit would not offend traditional notions of fair play and due process. Cf. Cozzens v. Piper Aircraft, above. Viewed on its own facts, it is clear that defendant availed himself of the laws of this state and purposefully entered into transactions therein. He had an "interest" in property under the statute and was properly amenable to service. This case, in summary, is nearly on all fours with Porter v. Nahas, 35 Ill.App.2d 360, sonableness, that is to say, the reasonticular suit in the state. Due process 182 N.E.2d 915 (1962) and the reasoning of the Court there gives ample support to this decision. See also deLeo v. Childs, 304 F.Supp. 593 (D.C.Mass. 1969). Although defendant relied heavily on Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, above, and the fact that it has never been overruled, it would seem that "Ever since International Shoe, Pennoyer v. Neff has been eligible for oblivion." Hazard, A General Theory of State-Court Jurisdiction, 1965 Sup.Ct. Rev. 241, 281. Although defense of this suit may cause inconveniences to the defendant, such inconveniences do not rise to the level of being a violation of due process where "minimal contacts" are present. Where a party has availed himself of the laws of a state, it is not unreasonable that he be held to answer thereunder. The statute is remedial and entitled to liberal interpretation, consonant with the principles of due process.

■ Finally, though not urged by the parties, it does not appear that application of the statute to a contract entered into before its enactment would be violative as impairing any obligations thereunder. "The statute . . . neither enlarged nor impaired respondent's (defendant) substantive rights or obligations under the contract." McGee v. International Life Insurance Co., 355 U.S. 220, 224, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). The statute herein may properly and constitutionally be applied to this lease as it does not affect substantive rights.

An order will be entered overruling the Motion to Dismiss and Quash Service of Process.