### STATE v. LEVAND, ET AL.*
(No. 1389; December 19, 1927; 262 Pac. 24)
(Rehearing Denied Jan. 31, 1928; 263 Pac. 623)

CRIMINAL LAW—VENUE—CRIMINAL LIBEL—PRELIMINARY EXAMINATION—INFORMATION—RIGHT TO SEPARATE TRIAL—COMPUTATION OF TIME—CHANGE OF VENUE—CONTINUANCE—LIBEL AND SLANDER—''PUBLISHING'' DEFINED—''COMMUNICATING'' LIBEL.

1. Venue of prosecution for criminal libel, within Const. art. 1, § 10, was properly laid in county where newspaper circulated, since Comp. St. 1920, § 7088, makes persons liable to prosecution for criminal libel who communicate publication.

2. Publishers of newspapers printed, published, and issued in ordinary way cannot be held guilty of more than one offense because of criminal libel contained in any issue of paper.

3. Since newspaper publishers cannot be held guilty of more than one offense under Comp. St. 1920, § 7088, because of criminal libel contained in any issue of paper, such single offense may be prosecuted in any county in which newspaper circulates.

4. Where charge of criminal libel under original information was a misdemeanor, under Comp. St. 1920, § 7431, no preliminary examination was necessary.

5. Where venue of prosecution for criminal libel was changed, amended information, filed after change of venue, was properly signed by county attorney of county to which venue was changed.

6. Where special attorneys appointed by court of county in which original information was filed signed amended information after venue of prosecution was changed, since no complaint thereon was made in lower court, defendants cannot complain on appeal.

7. Wyo. Comp. St. 1920, § 7544, providing that persons not brought to trial before end of third term after indictment found shall be discharged unless delay is occasioned by them is reasonable legislative declaration of what is and what is not "reasonable time" in bringing accused to trial within meaning of Const. art. 1, § 10, guaranteeing a speedy trial.

8. In computing time under Comp. St. 1920, § 7544, providing, if accused admitted to bail shall not be tried before end of third term in which cause is pending, held after indictment is found, he shall be discharged, term at which accused was indicted is generally not counted.

9. Where venue of prosecution for criminal libel was changed to another county, defendants were not denied speedy trial within Const. art. 1, § 10, and Comp. St. 1920, §§ 7435, 7544, and section 6426, as amended by Laws 1923, c. 2, where they were brought to trial within first term of court in county where venue of prosecution was changed to.

10. Where venue of prosecution for criminal libel was changed to another county, after defendants' refusal to waive objection to amendment of information in county where venue was changed, trial court's continuation of case on its own motion, under belief that continuation was neces-

sary to protect defendants' rights, *held* not abuse of discretion within Comp. St. 1920, § 7435, providing that amendment shall not delay trial unless good cause therefor is shown.

11. In prosecution for publication of newspaper article criticizing jury for bringing in verdict of not guilty in homicide prosecution, state was not required to prove that persons attacked were scandalized or otherwise injured, where character of article was such that in civil case it would have been libelous per se.

12. The basis for criminal liability for libel is its injurious effect on the public and its tendency to provoke breach of the peace.

13. Generally defendant may be held responsible in criminal case if defamatory words tend to disgrace and degrade person libeled or hold him up to public hatred, contempt, or ridicule, or cause him to be shunned or avoided.

ON PETITION FOR REHEARING.

14. Wyoming Comp. St. 1920, § 7088, relating to libel, does not confine crime to merely printing the libel, but makes persons liable who in any manner communicate it, using term "publishing" in broad sense of making it known, or in any other manner.

15. Publisher of newspaper who causes paper, after printing, to be circulated in ordinary manner, publishes it, which includes communication thereof within meaning of Comp. St. 1920, § 7088.

16. Information charging defendants "did unlawfully and maliciously publish, and aid in publishing (the libel) by causing the paper containing same to be circulated generally in county of," etc., *held* to charge that defendants "communicated" libel in violation of Comp. St. 1920, § 7088.

*See Headnotes:   (1) 37 C. J. p. 146 n. 30.   (2, 3) 16 C. J. p. 185 n. 19; 37 C. J. p. 146 n. 35.   (4-9) 16 C. J. p. 220 n. 19; p. 314 n. 72; p. 422 n. 38; p. 447 n. 18; 17 C. J. p. 53 n. 90.   (10) 17 C. J. p. 233 n. 83.   (11-13) 37 C. J. p. 138 n. 45, 51; p. 152 n. 92.   (14-16) 37 C. J. p. 141 n. 18 New; p. 149 n. 20.

APPEAL from District Court, Goshen County; WILLIAM A. RINER, Judge.

Max M. Levand and another were convicted of criminal libel, and they appeal.

*W. H. Patten, J. M. Roushar, Paul F. Ivey* and *John T. Bottom,* for appellants.

The alleged libelous article was published in Natrona County; the information charges that defendants were "late of" the County of Converse; defendants could not be informed against or lawfully tried elsewhere than in Natrona County, U. S. v. Smith, 173 Fed. 227; Const. Art. I, Sec. 10; Houston v. Pub. Co., 155 S. W. 1068; Pub. Co. v. Huddleston (Ala.) 92 So. 193; State v. Moore (La.) 72 So. 965; Davidson v. Co., 178 S. W. 68; U. S. v. Pub. Co., 219 U. S. 1. The Court erred in requiring defendants to go to trial upon the amended information; the prosecuting attorney of Goshen County was without authority to verify or file the amended petition, notwithstanding Sec. 1451 C. S. since the change was from another district court and from one county to another. It cannot be presumed that he was appointed, as in State v. Kusel, 29 Wyo. 287. Judge Brown designated the prosecuting attorney of Converse County to try the case and appointed two Goshen County attorneys to assist him. Judge Brown was without authority to make these appointments; it was an abuse of discretion to refuse a trial in June 1925; there was no showing of cause by the State for continuance. State v. Keefe, 17 Wyo. 227; Newlin v. People, 221 Ill. 166; Cummins v. People, 4 Colo. App. 71; State v. Kuhn 154 Ind. 450; in re McMicken, 39 Kans. 406; Section 3475 C. S. provides that no amendment shall operate to cause delay, unless for good cause. The amendments merely inserted innuendoes amounting to inferences and not statements of facts, Talbot v. Mack, 169 Pac. 29; Cooper v. Romney, 141 Pac. 289; Krone v. Black, 129 S. W. 43; McCauley v. State, 141 S. W. 975. The innuendoes could not extend or enlarge the

effect of the words declared on, Cooley on Torts (3rd ed.) p. 414; nor cure defects in the original information, U. S. v. Smith, 173 Fed. 227; 16 C. J. 485. Defendants were entitled to a preliminary examination, Latimer v. State, 55 Neb. 609. The evidence was insufficient to sustain the verdict, Newell Slander and Libel, p. 916. The reputation of the complainants was not injured by the publication.

*W. O. Wilson,* Atty. Gen. and *J. A. Greenwood,* Deputy Atty. Gen., for respondent; *David J. Howell,* former Atty. Gen. and *John C. Pickett,* former Assistant Atty. Gen., on the briefs.

The published article set forth the names of the jurors who acquitted Cantlin; they were charged with corruption by the Ku Klux Klan; a special mailing list was used in circulating the paper containing it; defendants were found guilty and fined; an offense was charged under Sec. 7088 C. S. The question of jurisdiction is governed by the common law rule permitting prosecution in the county of the defendants' residence, or in any county where the libelous matter was published, Odgers Libel and Slander, 157-158; State v. Piver (Wash.) 132 Pac. 858; State v. Huston (S. D.) 104 N. W. 451. The article was circulated in Converse County where the prosecution was brought, Alsup v. State (Tex.) 238 S. W. 667; Const. Art. I, Sec. 10; the word "publish" means to make public, 37 C. J. 141; Words and Phrases, Vol. 6, p. 5847; State v. Shaffner, 44 Atl. 620; Haas v. State, 20 Atl. 751; Street v. Johnson, 50 N. W. 395. No objection was made to special prosecutors at the trial; the continuance was not an abuse of discretion; the Goshen County prosecutor had authority to sign the amended information, State v. Kusel, 29 Wyo. 289; information was filed within thirty days preceding the term and no preliminary examination was necessary, Sec. 7431 C. S.; moreover the offense charged was a misdemeanor, State v. Nicholson, 24 Wyo. 347; State v. Tobin, 31 Wyo. 355; defendants were not deprived of constitutional rights, Sec. 7544 C. S.; State v. Keefe, 17 Wyo. 227. The point cannot be

first raised on appeal, re Begerow, 65 Pac. 828; Head v. State, 131 Pac. 937. The article was submitted to the jury upon a proper instruction, re McDonald, 4 Wyo. 150; the continuance was upon the court's own motion and no demand for trial was made at the time; costs were properly taxed, Nicholson v. State, supra; Sec. 7331 C. S.

*W. H. Patten, J. M. Roushar, Paul F. Ivey* and *John T. Bottom,* in reply.

No offense was committed in Converse County, Polzin v. Co., 250 Ill. 661; in re Gainsway, 123 N. Y. S. 966. The paper was published at Casper in Natrona County and put in circulation there; Brian v. Harper, 80 So. 885; State v. Bass, 54 Atl. 1113. There was but one publication and that was in Natrona County where defendants resided.

BLUME, Chief Justice.

The defendants were editor and manager respectively of the Casper Herald, a daily newspaper printed, issued and published at the times herein mentioned at Casper, Wyoming, with a circulation in Converse County, Wyoming, some copies of the paper being sent to one Welsh, an agent who sold them in the town of Douglas. During the month of October, 1923, one Cantlin was tried in the District Court of Converse County for the murder of Nellie E. Newcomb, charged to have been committed in Casper. On the 11th day of that month, the jury which had been selected to try that cause returned a verdict of not guilty. Thereafter, but on the same day, the following article appeared in the Casper Herald above mentioned, namely:

"CANTLIN FREED BY JURY<br>WYOMING'S SHAME

Erroll J. Cantlin has been granted legal permission by a jury of Douglas citizens, (God save the Word) to shoot and kill women autoists who fail to put on their dimmers while he is driving on the same road. The acquittal of this self confessed slayer marks a victory for the Invisible Empire in Wyoming. The slimy hand of the Ku Klux Klan, stained

with the blood of hundreds of innocent men and women, showered its hold in the right place.

"Twelve good men and true! have set aside the laws of the civilized world in order to free a man whose hands are red with the blood of a defenseless victim. With such support and encouragement Cantlin should wind up with an enviable record as a gunman. No longer will he have to accept the wages of an undersheriff. The way is open for him to go on the stage and clean up thousands. A man that can hit an automobile twice at point blank range with bullets fired from a pistol aimed in another direction is indeed an object of curiosity. His name should live forever in the Hall of Fame. There should be a great demand for his memoirs. We suggest that he write a book and call it "The Wonders of Moonshine, or Women I Have Killed." With the riches that will pour in from the receipts at the vaudeville houses and the sale of the book we hope Cantlin will not forget the men who helped place the stamp of authenticity on his weird tale. They should at least be entitled to one-half of what he earns. But then again maybe they won't need it. The Ku Klux Klan it is said, pays those who serve them with a generous hand. And transposing some of Attorney Hemmingway's words, spoken yesterday, 'we don't see how any attorney could be so vile as to protect such a client.' Again we repeat, 'twelve good men and true.' True to the principles of that doctored brand of Americanism taught by the Ku Klux Klan. They served their Kleagle well. And they undoubtedly will be handsomely rewarded. An innocent woman lies dead in her grave. Slain for no cause at all. And a jury of 12 Douglas citizens declare it was Cantlin's duty to kill her. If you drive a car, be careful. The 'crime' of failing to turn on your dimmers is punishable by DEATH. Warn your wife and sisters. Human life is something to be taken at will by an undersheriff. 'Twelve good men and true' have so declared at Douglas. Here are their names, men. Look them over. These are the men who said after hearing the evidence that Cantlin was justified in killing Mrs. Nellie B. Newcomb who now rests unavenged in her grave.

| Chester Sims | Lloyd Groggert | Charles Patterson |
|---|---|---|
| E. R. Rouse | George Peake | William Gerlock |
| H. B. Harton | James Pexton | Macky Jackson |
| Floyd Roush | F. F. Call | Jack Kerwin" |

On October 31, 1923, an information was filed in Converse County, charging the above named defendants with criminal libel, based upon the article appearing in the newspaper as above mentioned, and under section 7088, W. C. S. 1920, which reads as follows:

"Whoever makes, composes, dictates, prints or writes a libel to be published; or procures the same to be done; and whoever publishes or knowingly aids in publishing or communicating a libel, is guilty of libel, and shall be fined not more than one thousand dollars, to which may be added imprisonment in the county jail for not more than three months."

On May 7, 1924, the defendants appeared and filed a motion to change the place of trial from Converse County. On the same day the motion was granted and the cause was transferred to Goshen County, Wyoming, for trial, and the court also on the same day made and entered an order appointing Reid & More of Torrington, Wyoming, to assist the County Attorney of Goshen County in the prosecution of the cause. On May 8, 1924, the defendants filed a motion for a change of judge. This motion, too, was sustained and the cause was referred to the Hon. William A. Riner. Nothing further appears to have been done in the cause, aside from the transfer thereof, until June 18, 1925, when a motion was filed by the County Attorney of Goshen County, and other attorneys in the case, for permission to amend the information. This motion was presented to the court and sustained, over the objection of the defendant, on June 25, 1925, and the cause was continued over the term, which, too, was over the objection of the defendants. The case was set down for trial on November 17, 1925. On that day the defendants filed a motion to quash the amended information, which was overruled. The defendants then pleaded not guilty, and the trial of the case was commenced. The jury returned a verdict of guilty, and each of the defendants was fined the sum of $250, and the costs of the action. From this judgment they have appealed.

1. It is contended that under section 10 of article 1 of the Constitution of this state, a defendant in a criminal case is entitled to a trial in the county in which the offense charged has been committed; that in the instant case the offense, if any was committed, was committed in Natrona County, Wyoming; that, accordingly, there was no authority to commence this action in the District Court of Converse County. If the premises are correct, that is to say, if the crime charged was only committed in Natrona County, if at all, the contention must be sustained. But the general current of authority is the other way. In 17 R. C. L. 464, it is said:

"It is generally held that a criminal prosecution for libel may be instituted in any jurisdiction where the libelous article was published or circulated irrespective of where such article was written or printed."

The text is based on a note to 9 Ann. Cas. 382, where a number of cases are cited sustaining this rule. In King v. Girdwood, 1 Leach 142, 168 Eng. Reprint, decided in 1776; in King v. Johnson, 7 East 65, 103 Eng. Reprint, decided in 1805, and in Rex v. Watson, 1 Camp. 215, 170 Eng. Reprint, decided in 1808, it was held that a libelous letter sent through the mail warranted prosecution in the county in which the letter was received. See also King v. Burdett, 4 Barnw. & Ald. 95, 6 E. C. L. 404, decided in 1820. Perhaps the earliest case on the subject in the United States is Com. v. Blanding, 3 Pick. (Mass.) 304, decided in 1825. That case held that the author of a libel printed in a newspaper could be prosecuted in the county in which the paper circulated, though it was printed in an adjoining state. That, too, was held in the case of Baker v. State, 97 Ga. 452, 25 S. E. 341. See also Belo & Co. v. Wren, 63 Tex. 686, 721; State v. Huston, 19 S. D. 644, 104 N. W. 451, 9 Ann. Cas. 381; State v. Piver, 74 Wash. 96, 132 Pac. 858, 49 L. R. A. (N. S.) 941; State v. Berry, 112 Me. 501, 92 Atl.

619; note 37 A. L. R. 914-917; 25 Cyc. 433; 18 Am. & Eng.
Ency. Law (2nd ed.) 1119; 37 C. J. 146.

Whatever may be the meaning of the word "publish" or
"publishing," used in section 7088, W. C. S. 1920, the sec-
tion also makes persons liable to prosecution for criminal
libel who "communicate" it. In the case at bar the de-
fendants "communicated" the libel in question to readers
in Converse County through the mail, and such libel is, ac-
cording to the authorities already cited, punishable in the
county where it is received. Again, defendants "communi-
cated" the libel to readers in the same county through an
agent in that county and hence, though the communication
by that means commenced at Casper, it was not completed
except through the agent. The communication of a libel is
necessarily often continuing in its nature, and when it is
begun in one county but completed in another, there is no
sound reason why the venue for a prosecution based there-
on should be laid in the county where the communication
began, rather than in the county where it was received.
In Palliser v. United States, 136 U. S. 257, 34 L. Ed. 514,
10 Sup. Ct. 1034, the defendant was charged with an at-
tempt, by mail, to induce a postmaster to violate the law.
Mr. Justice Gray, in speaking of a continuing crime, said,
among other things, as follows:

"Where an offense is committed by means of a communi-
cation through the post office, the sender has sometimes, as
appears by the cases cited for the petitioner, been held to
be punishable at the place where he mails the letter. * * *
But it does not follow that he is not punishable at the place
where the letter is received by the person to whom it is ad-
dressed, and it is settled by an overwhelming weight of au-
thority that he may be tried and punished at that place,
whether the unlawfulness of the communication through
the post office consists in its being a threatening letter * * *
or a libel * * * or a false pretence or fraudulent repre-
sentation * * *. In the case before us the offense charged
being an offer of money * * * in a letter mailed in New
York and addressed to a postmaster in Connecticut * * *
it might admit of doubt whether any offense against the

laws of the United States was committed until the offer or tender was known to the postmaster, and might have influenced his mind. But there can be no doubt at all that if any offense was committed in New York, the offense continued to be committed when the letter reached the postmaster in Connecticut.''

The principle of that case was reaffirmed in Armour Packing Company, 207 U. S. 590, 28 Sup. Ct. 256, 52 L. Ed. 354.

The cases of Houston v. Pulitzer Pub. Co., 249 Mo. 332, 155 S. W. 1068; Age Herald Pub. Co. v. Huddleston, 207 Ala. 40, 92 So. 193, 37 A. L. R. 898; U. S. v. Smith, 173 Fed. 227, and State v. Moore, 140 La. 281, 72 So. 965, have been cited as holding a contrary rule. The first two of these cases were civil cases. The Missouri case holds that a plaintiff in a libel case should not be permitted to have any greater rights as to the venue of his action than a plaintiff in any other case, and should not be permitted to bring his action in any county of the state where a newspaper, containing the libel sued upon, circulated, and that a law authorizing him to do so would deny the defendant in such case the equal protection of the laws. The Alabama case holds that under a statute providing that an action should be brought ''in the county where the injury occurred,'' an action for libel is required to be brought where the newspaper is printed and issued. Some of the reasoning in these cases, however, and much of what is said in the other two cases, tends to sustain the contention of the counsel for the defendants herein. None of them, however, dealt with a statute which makes the communication of a libel a crime.

In the Federal case, Judge Anderson held that unless the act constituting a criminal libel is considered to be complete where the paper is printed and issued, it would follow that the circulation of the paper in each and every county would constitute a separate crime. The Louisiana court follows the same line of reasoning, but further considers the point that one conviction would bar a second prosecution, and says:

"To say that a prosecution and conviction by a court having jurisdiction in any parish where one of the newspapers found its way would protect the defendant from prosecution in any other parish does not answer the constitutional requirement that he shall be tried for what he did in the parish where the offense was committed and in no other parish."

In the Alabama case the court said:

"If every separate publication of the identical libel is indeed a separate offense, there is no escape from the conclusion that separate actions and prosecutions may be simultaneously maintained in every judisdiction * * *. But sensible of the injustice and absurdity of such a result, as applied to newspapers, the majority of the Missouri court in Julian v. K. C. Star Company (209 Mo. 35, 107 S. W. 496) held that, regardless of the number of papers simultaneously or successively mailed out from Jackson County and circulated in other counties 'there was but one publication—one utterance—and though some of the papers did not reach their destination as soon as others, yet they all emanated from the one act and all constituted but one libel, if libel at all.' It is difficult to see how a single cause of action complete at one place, and fully accrued, can subsequently 'accrue' in another place, or many other places, for the purpose of acquiring a new venue."

We fully concur, that so far as publishers of newspapers, printed, published and issued in the ordinary way, are concerned, they cannot be held guilty of more than one offense on account of a criminal libel contained in any issue of the paper. There is in such case but one act, but one utterance. But we cannot overlook the fact, overlooked in the cases just cited, that such act, such utterance, is, or is apt to be, necessarily continuing in its nature, and though in such case there is but one crime (Armour Packing Co. v. United States, supra), why should it be said to have been committed in the county where the paper is printed and issued, any more than in the county where it is circulated and where the main injury from the libel is apt to be in-

flicted, particularly in a case where, as under our statute, the communication of a libel, knowingly done, constitutes a crime? We realize the fact that to permit prosecution to be commenced in any county in the state where the paper circulates may at times lead to great abuse. But on the other hand, to hold that the place of printing and issuing the paper is the only place where such prosecution can take place, might also lead to great abuse, and would, for instance, enable a newspaper, printed outside of the state but circulated within it, to vilify citizens of this state without restraint, leaving the latter virtually helpless victims in the hands of the unscrupulous, even though the authors of a libel should live in this state or could be reached within it subsequent to the publication. We do not believe that such was the intention of the legislature in enacting our statute and we think that the venue in the instant case was properly laid in Converse County.

2. The original information was filed in October, 1923. No preliminary examination was had, but this was not necessary, inasmuch as the charge was a misdemeanor. Nicholson v. State, 24 Wyo. 347, 157 Pac. 1013; State v. Tobin, 31 Wyo. 355, 226 Pac. 681; sec. 7431, W. C. S. 1920. An amended information was filed, as heretofore stated. This was properly signed by the county attorney of Goshen county, Wyoming, as we held in the case of State v. Kusel, 29 Wyo. 289, 213 Pac. 367. Other attorneys specially appointed by the court also signed with him and appeared with him in the case, but no complaint of this was made in the lower court, and cannot, of course, furnish the basis of complaint here. The amended information was not filed until June, 1925. The defendants objected to that, and when they refused to withdraw their objections, the court on its own motion, continued the cause over the term. Counsel for defendants, accordingly, maintain that they did not have the speedy trial guaranteed to them under section 10, article I of the Constitution of this state, and that the continuance of the cause was in violation of the provision of

section 7435, W. C. S. 1920, which provides that "no amendment shall cause or operate to cause any delay of the trial, unless good cause therefor is or shall be shown by affidavit." Section 7544 provides, that if a person indicted for any offense, who has given bail for his appearance, as was true in the case at bar, shall not be brought to trial before the end of the third term of court in which the cause is pending, held after such indictment is found, he shall be entitled to be discharged, unless the delay shall happen on his application, or be occasioned by the want of time to try such cause at such term. We have held that section to be a reasonable legislative declaration of what is and what is not a reasonable time in bringing an accused to trial within the meaning of the constitution that a defendant is entitled to a speedy trial. State v. Keefe, 17 Wyo. 227, 98 Pac. 122, 22 L. R. A. (N. S.) 896, 17 Ann. Cas. 161. In computing the time under such statutes, the term at which the accused was indicted is generally not counted. 16 C. J. 447. Sec. 6426, W. C. S. 1920, as amended by chapter 2 of the Session Laws of 1923, provides that "the jurisdiction of the court to which the change is directed is complete upon the filing of the original papers and transcript in the clerk's office in that court, and the cause must be docketed and stand for trial as if it had originated in that court." This, as well as section 7544 itself, would seem to indicate, and counsel in the case in fact seem to agree, that we cannot consider the time consumed in this case in Converse county, in order to apply the rule of section 7544, supra; that, in other words, in so far as that section is concerned, we should consider the case as though it had been commenced in Goshen county as of the time when the change of venue to that county was completed. The law has provided for only one term of court a year in Goshen county, the term commencing on the third Tuesday of November of each year. Chapter 77, Session Laws of 1923, and chapter 59 of the Session Laws of 1925. It does not appear whether any term of court was held in Goshen county in 1924. For

aught that appears the term commencing in November, 1923, may have been held during that year, and so far as the record discloses, the first term held in that county, after the change of venue herein was taken, was held in June, 1925. The trial of this case was held in November of that year, and it is clear, accordingly, that we cannot hold that the constitutional rights of the defendants for a speedy trial have been violated. Section 7435, supra, provides, it is true, that no amendment shall cause or operate to cause any delay of the trial, unless good cause therefor is shown by affidavit. It does not fully appear what actuated the court to continue the case on its own motion. The fact that it did so when the defendants refused to waive their objection as to the filing of the amended information, would seem to indicate that it believed the continuance necessary to fully protect the rights of defendants. Section 7435, supra, we think, simply means to provide that neither party to a cause shall have a right to ask for a continuance, unless an affidavit showing a good and sufficient reason therefor has been shown. A court must necessarily have a certain amount of discretion in setting cases down for trial, and the section cited does not, we think, mean to prevent a court from continuing a cause on its own motion under proper circumstances, and we should not, we think, interfere unless prejudice is shown. There is nothing in the record which indicates such prejudice.

3. Mr. Jackson, one of the jurors in the trial of Cantlin, testified that no one, after the publication of the article in question, treated him differently from what he had been treated before; that he had just as many friends in Converse County as before; that he had not been disgraced in any way. No testimony was offered by the State to show that any of the jurors in the Cantlin case had been scandalized, damaged, disgraced or otherwise injured. Hence, it is contended that the evidence is insufficient to sustain the verdict. Counsel for the defendants have cited us to no authority sustaining their contention. The basis for criminal

liability for libel is its injurious effect on the public or its tendency to provoke breach of the peace. And it is generally held that a defendant may be held responsible in a criminal case, if the defamatory words are of such a nature that they *tend* to disgrace and degrade the person libeled or hold him up to public hatred, contempt or ridicule, or cause that person to be shunned or avoided. 37 C. J. 138. The character of the article in question here is such that in a civil case it would be held libelous *per se,* requiring no showing of special damages in order to enable a plaintiff in such suit to recover. Neither did it require any evidence on the part of the State in this case that the persons attacked were in fact scandalized, damaged, disgraced or otherwise injured. The article speaks for itself, and the jurors in the instant case were just as able to determine its nature and its tendency as any witnesses might have been. And Mr. Jackson and any of the other jurors in the Cantlin case against whom the article in question was directed might be among those least able to judge as to the effect or the tendency thereof. The contention, accordingly, must be overruled.

Finding no reversible error in the record, the judgment herein should be affirmed, and it is so ordered.

*Affirmed.*

POTTER, J., and KIMBALL, J., concur.

### ON PETITION FOR REHEARING

BLUME, Chief Justice.

A petition for a rehearing has been filed in this case. We stated in the original opinion that "whatever may be the meaning of the word 'publish' or 'publishing' used in Section 7088 W. C. S. 1920, the section also makes persons liable to prosecution for criminal libel who 'communicated' it." It is now argued that the amended information in the case does not charge the defendants with "communciating" the libel in question. We did not, perhaps, go far enough in our original opinion in stating our position, and the way

we stated it may be somewhat misleading. We did not mean to intimate that "publishing" a libel does not, in the proper case at least, also include "communicating" it. It is clear that the legislature did not intend to confine the crime to merely printing a libel; it also meant to hold persons liable who in any manner communicated it either by publishing it—using the term "publishing" in the broad sense of making it known—or in any other manner. We think that a publisher of a newspaper who causes the paper, after printing, to be circulated in the ordinary manner "publishes" it, which includes "communication" thereof. We further think that the amended information clearly charges the defendant with communicating a libel, though not in so many words, for it charges that the defendants "did unlawfully and maliciously publish and aid in publishing (the libel) by causing the paper containing the same to be circulated generally in the county of Converse in the State of Wyoming." This language clearly implies that the defendant "communicated" the libel.

The other points argued go over the same ground as on the original hearing. We see no reason to change our opinion thereon, and the petition for rehearing must accordingly be denied.

*Rehearing Denied.*

KIMBALL, J., concurs.