Roger Noel OLMSTEAD, Appellant,
(Plaintiff below),

v.

AMERICAN GRANBY COMPANY, a
Delaware Corporation, et al., Appel-
lees, (Some of defendants below).

No. 4672.

Supreme Court of Wyoming.

May 13, 1977.

Lee Overfelt and Charles A. Bradley, Billings, Mont., and H. S. Harnsberger, Jr., Riverton, for appellant.

R. R. Bostwick, of Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, for appellee-American Granby Co.

Michael S. Messenger and Louis L. Walrath, Thermopolis, for appellee-Billings Pipe and Pump Supply Co.

Richard M. Davis, Jr., of Burgess & Davis, Sheridan, for appellee-State Stove and Mfg. Co., Inc.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

The appellant, Roger Noel Olmstead, brought this action, alleging negligence and breach of warranty, against the appellees, American Granby Company, Billings Pipe and Pump Supply Company, State Stove and Manufacturing Company, Inc., and six other defendants, seeking to recover damages for personal injuries sustained when an air pressure tank exploded while he was adjusting it near Powell, Wyoming.

The district court dismissed the complaint against each of the appellees, finding that it did not have jurisdiction over these parties under the Wyoming long-arm statute, § 5–

4.2, W.S.1957, 1975 Cum.Supp.[1] The appellant filed a notice of appeal from these dismissals, but the appeal was dismissed by this court because of the failure to comply with the requirements of Rule 54(b), W.R. C.P. *Olmstead v. Cattle, Inc.,* Wyo., 541 P.2d 49. Subsequently, the appellant moved for and the district court entered a final judgment, dismissing the appellees from the suit, consistent with the requirements of Rule 54(b), W.R.C.P. The appellant again filed a notice of appeal from this judgment, and the matter is now properly before this court.

The appellant contends that service was had upon all three appellees under the Wyoming long-arm statute, supra, while the appellees argue that no such service has been effected.

The trial court's order dismissing the complaints against the appellees will be reversed.

The following business relationships of the three corporate appellees to Wyoming is significant to a discussion of the question presented herein.

*American Granby Company:*

This company is a Delaware corporation engaged in the design, manufacture and marketing of air pressure tanks and other plumbing equipment. It supplied the air tank in question in this litigation to the Billings Pipe and Pump Supply Company. American Granby, an affiliate of State Stove, has no office or facility for its products in Wyoming and has not designated an agent for service of process in this state. It pursues its business activities through the utilization of eight wholesalers located in Casper, Cheyenne, Powell and Sheridan, Wyoming, and revenues earned in this state do not exceed $5,000.00.[2]

*Billings Pipe and Pump Supply Company:*

Billings Pipe is a Montana corporation, having its principal place of business in Montana. It is a wholesaler-retailer of tanks, pumps, pipes and other plumbing equipment. Billings Pipe is not qualified to do business in Wyoming and does not maintain an agent, solicit business or advertise here. It does fill unsolicited orders from this state and, in fact, filled the order for the tank in question by trans-shipment through an independent carrier. In 1973, Billings Pipe had 30 Wyoming customers, nine of which were retail firms, generating 70 orders and $8,423.80 in revenue. In 1974, it had 29 customers, nine of which were retail firms, generating 77 orders and $13,366.48 in revenue.

*State Stove and Manufacturing Company, Inc.:*

State Stove is a Tennessee corporation and, at all times relevant here, was engaged in the design, manufacture and installation of water heaters, pump tanks and other plumbing equipment and, in fact, manufactured the tank in question. State Stove, through its affiliate American Granby, shipped, or through its agents caused to be shipped, the questioned tank involved in

1. Section 5-4.2, W.S.1957, 1975 Cum.Supp., provides as follows:

    "(a) In addition to all other bases of jurisdiction otherwise authorized or provided by law, any court of this state may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

      "(i) transacting any business in this state;
      "(ii) contracting to supply services or things in this state;
      "(iii) causing tortious injury by an act or omission in this state;
      "(iv) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct in this state or derives substantial revenue from goods consumed or services used in this state;
      "(v) having an interest in, using, or possessing real property in this state; or
      "(vi) contracting to insure any person, property, or risk located within this state at the time of contracting.

    "(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him."

2. The record does not indicate whether the $5,000.00 received by American Granby is an annual figure.

this case to appellee—Billings Pipe and Supply, which company forwarded the item to retailer—A. L. Scott & Sons of Powell. This last mentioned company sold the tank to the ultimate consumer, upon whose property it was located when the appellant was injured. State Stove has no offices, employees or agents in Wyoming and does not solicit or advertise here. It offers no installation services to customers and is generally unaware of the ultimate destination of its products. Its products have in the past been sent through independent parties to customers in Wyoming, generating less than ¹⁄₁₀₀ of 1% of its total revenue.[3] State Stove has received orders from N. A. Nelson Construction Company of Sheridan, Wyoming, which it fills by shipment to a Colorado firm which then ships the product to N. A. Nelson Construction Company.

## THE BACKGROUND

■ The problem of whether or not a court has jurisdiction in such circumstances as these is always presented in two parts. First, it must be decided whether or not the state law was intended to include the corporate service and activity. If that question is resolved affirmatively, it must next be determined whether the state law, as applied to the facts of the case, offends the due process clause of the Federal and State constitutions. *Ford Motor Company v. Arguello*, Wyo., 382 P.2d 886, citing *Lone Star Motor Import, Inc. v. Citroen Cars Corp.*, 5 Cir., 288 F.2d 69, 72.

We have previously considered the question of the sufficiency of the activities of a foreign corporation which will subject it to the jurisdiction of Wyoming courts. *Ford Motor Company v. Arguello*, supra; and *Cozzens v. Piper Aircraft Corp.*, Wyo., 514 P.2d 1375. See also Federal court cases, *Pullen v. Hughes*, 10 Cir., 481 F.2d 602; *Prehoda v. Edward Hines Lumber Co.*, D.C. Wyo., 399 F.Supp. 643; *Leff v. Berger*,

D.C.Wyo., 383 F.Supp. 441; and *Whitaker v. Denver Post, Inc.*, 401 F.Supp. 60 (D.Wyo.1975), reversed in part *Anselmi v. Denver Post, Inc.*, 10 Cir., 552 F.2d 316.[4]

While these decisions have not answered all questions pertaining to the powers and scope of the Wyoming long-arm statute and § 17–36.104, W.S.1957, C.1965, 1975 Cum. Supp., and its predecessor § 17–44, W.S. 1957, reference to them, nonetheless, provides valuable guidelines for the consideration of the issue here presented.

■ In holding that Ford was doing business ("does business", § 17–44, W.S.1957), we decided in *Ford v. Arguello*, supra, that the activities in which Ford was engaged in Wyoming through its dealership sales and service were sufficient to grant jurisdiction to the courts of this state in a products liability type of action. In so holding, we embraced the doctrine of minimum contact which we recognized must be weighed and balanced against the safeguard of due process of law. We said, quoting from *International Shoe Company v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 158, 159, 160, 90 L.Ed. 95:

> " ' . . . But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [Citations].' "

In *Ford v. Arguello*, supra, at 895, we concluded that the foundation case law contained in *International Shoe Company v. State of Washington*, supra, *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; and *Hanson v.*

---

3. The record does not indicate the total revenues of State Stove upon which this percentage is based.

4. For further discussions of this question, see 4 Land & Water Law Review 235 (1969); 9 Land & Water Law Review 649 (1974); 11 Land & Water Law Review 557 (1976); Annotation, 19 A.L.R.3d 138; Annotation, 24 A.L.R.3d 532; and Annotation, 27 A.L.R.3d 397.

*Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, reh. den. 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92, gave rise to the general rule:

". . . [S]o long as the activities of a foreign corporation are sufficiently qualitative in nature and extent reasonably to show 'minimal contacts' with the state and state law on the subject is justly construed and applied to reach those activities for jurisdictional purposes under 'traditional notions of fair play and substantial justice,' all demands of due process are satisfied."

In *Cozzens v. Piper Aircraft*, supra, at 1378, we went on to emphasize, citing *Hanson v. Denckla*, supra, that

" ' * * * The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. * * * ' "

We noted that *Hanson*, supra, cautioned that *International Shoe Company*, supra, does not serve to eliminate all restrictions on personal jurisdiction of state courts, observing the

". . . ever pervasive shadow of due process beyond which we cannot go." [5]

Even where due process requirements are shown to be satisfied, Wyoming's statutory law must also be measured against the activities of the companies in question in reaching a decision as to whether or not jurisdiction is conferred upon the state courts. In *Ford Motor Company v. Arguello*, supra at 895–896, we construed § 17–44, W.S.1957, now superseded by § 17–36.104, W.S.1957, C.1965, 1975 Cum.Supp.[6], and found it gave the Wyoming court jurisdiction of the Ford Motor Company in a personal injury action where plaintiff alleged that a defective product caused the accident. In coming to our conclusion, we observed:

". . . It seems apparent also that to accomplish its purpose the legislature purposely prescribed a broad standard in order that the statute might receive a reasonable interpretation in keeping with advancements in the law relating thereto and developments in the field of commercial enterprise . . . ."

It seemed clear, however, that the term "transacts business," contained in the statute,

". . . would not embrace casual, isolated, or sporadic transactions of limited duration and extent but beyond that the matter must be 'determined largely according to the facts of each individual case.' 20 C.J.S. Corporations § 1920a, p. 151; *International Shoe Company v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 159, 90 L.Ed. 95."

In later construing the Wyoming long-arm statute, § 5–4.2(a)(i), supra, we found the "sporadic transactions" rule equally applicable to the language which allows the exercise of personal jurisdiction

---

5. In *Hanson v. Denckla*, the court said:

". . . But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See *Vanderbilt v. Vanderbilt*, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with

that State that are a prerequisite to its exercise of power over him. . . ." 357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d 1283.

6. Section 17–36.104, W.S.1957, C.1965, provides in pertinent part:

"Whenever a foreign corporation does business in this state without having obtained a certificate of authority, . . . then the secretary of state shall be an agent of such corporation upon whom any such process, notice, or demand may be served. . . ."

over a person "transacting any business in this state." *Cozzens*, supra, at 1379, accord, *Prehoda*, supra, at 646–647. It may, however, be more difficult to obtain jurisdiction under § 17–36.104, supra, than under § 5–4.2(a)(i), supra. *Cozzens*, supra, at 1378–1379, and cases cited. In *Cozzens*, the accident in question occurred in Colorado and, although this was not decisive in itself and the action could be maintained in Wyoming if adequate proof of minimal contact could be made, we held,

". . . [w]hen the cause arises in another state the activities of the foreign corporation must be substantial to satisfy the requirements of minimal contact, (cases cited) . . . ." *Cozzens*, supra at 1378.[7]

■ In construing § 5–4.2(a)(ii), supra, which allows personal jurisdiction over a person who has contracted "to supply services or things in this state," we held that written or implied warranties, standing alone, and without the performance of sufficient additional service would not create jurisdiction under § 5–4.2(a)(ii) since this would "pass the bounds of due process" and would offend the statutory provisions by ignoring the usual elements of minimal contact. *Cozzens*, supra, at 1380.

This court was unable to consider § 5–4.2(a)(iii), supra, in *Cozzens* because of appellant's inability to demonstrate that the defendants had caused "tortious injury by an act or omission in this State." *Cozzens*, supra, at 1380. As a result, §§ 5–4.2(a)(iii) and (iv), supra, have never been before this court for construction.

Sections 5–4.2(a)(iii) and (iv) have been considered by the Federal District Court for Wyoming and the Tenth Circuit Court of Appeals and, while we are not bound by these decisions, an examination of the work of these able courts will be useful to our efforts here. In a case where a tire manufactured elsewhere caused injury in this state and there was no other evidence of the manufacturer's business contact in Wyoming, the Tenth Circuit Court of Appeals has observed that the Wyoming legislature chose to draw § 5–4.2(a)(iv), supra, with "definite, specific restrictions on the circumstances under which out-of-state persons may be reached." *Pullen v. Hughes*, supra, at 604. This arises from the legislature's use of the words "regularly," "persistent" and "substantial." The analysis led to the conclusion that jurisdiction was not conferred in this fact situation. The Federal District Court of Wyoming, in a defamation suit, has gone even further and concluded that § 5–4.2(a)(iv), supra, is equivalent to the "doing business" test found in § 17–36.104, supra. *Whitaker v. Denver Post, Inc.*, 401 F.Supp. 60 (D.Wyo.1975), *Anselmi v. Denver Post Inc.*, 10 Cir., 552 F.2d 316.[8] In *Whitaker*, the Tenth Circuit, in its decision entered on March 7, 1977, upheld the Federal District Court with respect to § 5–4.2(a)(iv), but reversed that court's holding concerning its interpretation of subsection (a)(iii).

In *Whitaker*, the Federal District Court for Wyoming held that (a)(iii) was unavailable to the plaintiff for purposes of obtaining jurisdiction because of the rule of *Insull v. New York World-Telegram Corporation*, 7 Cir., 273 F.2d 166, cert. den. 362 U.S. 942, 80 S.Ct. 807, 4 L.Ed.2d 770, holding that the single publication rule applied.[9] Reversing,

---

7. We cited *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 419, 96 L.Ed. 485, rehearing denied 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332; *Fisher Governor Company v. Superior Court of City and County of San Francisco*, 53 Cal.2d 222, 1 Cal.Rptr. 1, 347 P.2d 1, 3, and cases cited.

8. This conclusion is contrary to the observation of the commentators to the Uniform Interstate and International Procedure Act, 13 U.L.A. § 1.03, who indicated that these activities need not amount to the activity required by the "do-

ing business" test. Section 5–4.2, supra, is identical in wording to this uniform act.

9. In *Insull*, at 273 F.2d 171, the court said:
". . . In *Winrod v. Time, Inc.*, 334 Ill. App. 59, 65–72, 78 N.E.2d 708, 710–714, leave to appeal denied 336 Ill.App. xiv, it was held that in cases of multistate circulation of periodicals the cause of action for libel is absolutely complete at the time of first publication; subsequent appearances or distributions of the periodicals are of no consequence whatsoever to the creation or existence of the cause of action

the Tenth Circuit Court said that it would expect us, when considering a similar question, to follow the philosophy we expressed in *State v. Levand,* 37 Wyo. 372, 262 P. 24 (1927), where we said:

> " '. . . to hold that the place of printing and issuing the paper is the only place where such prosecution can take place might also lead to great abuse, and would, for instance, enable a newspaper, printed outside of the state but circulated within it, to vilify citizens of this state without restraint, leaving the latter virtually helpless victims in the hands of the unscrupulous, even though the authors of a libel should live in this state or could be reached within it subsequent to the publication. . . .' "

The appellate court therefore held that, in a defamation case under (a)(iii) of the statute, one can be libeled, and therefore the tort committed, not only where the publication is first made but also by a circulation of the publication, where the plaintiff and his reputation reside.

*Jurisdiction under Section 5–4.2(a)(iv)*

With this background in mind, we address our attention to an interpretation of § 5–4.2, as applied to the facts of this appeal. As we proceed, we are mindful of the criteria described by Chief Justice Stone in *International Shoe Company v. State of Washington,* supra, at 326 U.S., page 319, 66 S.Ct., at pages 159–160, 90 L.Ed. 95, to be applied where the court is called upon to make a jurisdictional determination, where he observed:

> "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether

the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. . . ."

■ The Wyoming legislature intended to extend state court jurisdiction to the constitutional limit. This is indicated by the general statement of legislative purpose, Session Laws of Wyoming 1967, Chapter 237:

> "An Act to increase the protection which Wyoming's courts can provide its citizens, by enlarging the personal jurisdiction of Wyoming courts over persons outside Wyoming and providing additional methods of service of process."

See also *Ford v. Arguello, supra* at 896, where we said, when considering § 17–44, supra:

> " . . . In fact, we find nothing in the statute that indicates a purpose other than to assert jurisdiction over a nonqualified corporation to the extent authorized by the due process clause." [10]

It is unnecessary, in reaching our decision, for us to consider any subsection of § 5–4.2, W.S.1957, 1975 Cum.Supp., except subsection (a)(iv). This subsection effectively confers jurisdiction over all the appellees upon the courts of this state.

■ In reaching this conclusion concerning subsection (a)(iv), we find that the facts

---

but are only relevant in computing damages. To the same effect was our holding in *Winrod v. MacFadden Publications, Inc.,* 7 Cir., 187 F.2d 180, 182, certiorari denied 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616." [Footnote number omitted]

10. It is to be observed that the Legislature of 1977 has repealed § 5–4.1 and § 5–4.2, W.S.

1957, 1975 Cum.Supp., and § 5–4.3 is amended to read:

> "(a) A Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution." [This is House Enrolled Act § 88. It will be Chapter 1, § 78, of the 1977 Session Laws. Effective May 27, 1977.]

here show enough of a "persistent course of conduct" ((a)(iv), supra) or derivation of "substantial revenue from goods consumed" ((a)(iv), supra) within the State of Wyoming by each of the appellees to constitute the minimum contacts necessary to give the State courts of Wyoming jurisdiction without offending the traditional due process notions of fair play and substantial justice.[11] As directed by *Ford Motor Company v. Arguello, supra*, the determination of this issue calls for our exercising high concern for the qualitative nature and extent of the appellees' Wyoming activities.

Both American Granby and State Stove purposefully inject their products into a nationwide distribution system by way of independent wholesalers. This kind of a distribution plan should give rise to a knowledge upon the part of these appellees that their products could reasonably be expected to reach Wyoming and be utilized here, especially when wholesalers in this state or region are a part of the distribution process. In fact, that must be their hope as they undertake the marketing of their product in this manner. This foreseeable probability is even more evident in the case of Billings Pipe which regularly supplied Wyoming retail outlets, as well as individual customers. The fact that the orders for appellees' products are unsolicited does not serve to diminish the nature and focus of appellees' activities.

■ Considering the appellees' business practices as they undertake a purposeful exposure of their products to Wyoming consumers, we find that, qualitatively, the adopted manner of doing business is sufficient to satisfy the "persistent course of conduct" provision of subsection (a)(iv), supra, and we further hold that it was the intent of the legislature in enacting the subsection to give Wyoming courts jurisdiction when such business conduct is being employed in this state.

■ In addition, appellees derive "substantial revenue" ((a)(iv), supra) from goods consumed here. American Granby admits that it earns $5,000 in revenues from Wyoming. Billings Pipe indicates that it had total sales' revenue of $8,423.80 in 1973 and $13,366.48 in 1974. State Stove indicates it receives less than 1/100 of 1% of its revenue from Wyoming. Admittedly, 1/100 of 1% is a small ratio and is not the best indicator of the amount of business done in Wyoming by this appellee, "since ratio is not itself a quantity but merely the relation of one quantity to another." *Mark v. Obear & Sons, Inc.*, 313 F.Supp. 373, 375 (D.Mass. 1970). We do not, however, consider the amount of gross income to be the determining factor since we have found the qualitative requirements for conferring jurisdiction over State Stove to have been fulfilled. The use of a figure representing the percentage of gross business, while arguably inconclusive by itself, does not determine State Stove's fate in light of that company's undisputed mode of distribution. Jurisdiction can be conferred if *any* of the elements of subsection (a)(iv) are present. See *Liberty Mutual Insurance Co. v. American Pecco Corp.*, 334 F.Supp. 522 (D.C.C. 1971); and *Founding Church of Scientology v. Verlag*, 175 U.S.App.D.C. 402, 536 F.2d 429 (1976).

■ Where the question of the percentage of a defendant's total business was at issue in *Founding Church, supra*, the Court of Appeals for the District of Columbia held that the amount of business resulting in "substantial revenue" was but one way of determining whether the court has jurisdiction under a provision identical to our subsection (a)(iv). The court said:

" . . . Viewed in light of the statute's history, such a connection sufficient to authorize the assertion of personal jurisdiction over a nonresident defendant can be demonstrated only by proving that

---

11. In reaching this conclusion, we find particularly persuasive opinions from those states which have long-arm statute provisions identical to § 5–4.2(a)(iv), supra: Arkansas, Ark. Statutes § 27–2502, subsec. C, par. 1(d); District of Columbia, D.C.Code § 13–423; Massachusetts, Mass.Gen.Laws Ann., ch. 223A, § 3; Maryland, Code Md.1957, art. 75, § 96(a)(4); Oklahoma, Okla.Stat.Ann. Tit. 12, § 1701.03; and Virginia, Va.Code § 8–81.2(a)(4).

the defendant has *one of three types of contact* with the District and that the connection at least evinces the minimum contact with the District sufficient to satisfy traditional notions of fair play and substantial justice. See *International Shoe Co. v. Washington, supra,* 326 U.S. at 316, 66 S.Ct. 154, 90 L.Ed. 95." [Emphasis supplied]

In considering whether 1% of the company's gross revenue was sufficient to fulfill the "substantial revenue" requirement, the court, in *Founding Church of Scientology v. Verlag, supra,* turned to *Ajax Realty Corp. v. J. F. Zook, Inc.,* 4 Cir. 1972, 493 F.2d 818, when it (the *Founding Church* court) said:

"* * * Although percentage of total sales may be a factor to be considered, it cannot be dispositive, for a small percentage of the sales of a corporate giant may indeed prove substantial in an absolute sense.[5] On the other hand, it is difficult

[5] Conversely, a relatively small absolute amount might be deemed 'substantial' where it constitutes a significant percentage of a small corporation's total sales.

to identify an absolute amount which *ipso facto* must be deemed 'substantial.'

*Accord, Egeria, Societa di Navigazione Per Azioni v. Orinoco Mining Co.,* 360 F.Supp. 997, 1002 (D.Md.1973). . . ."

Considering the purpose for which the long-arm statute was enacted, this court concludes that, under the evidence of record herein, amounts shown to have been received constituted "substantial revenue" within the meaning of the statute, or—the course of business conduct adopted by the appellees conferred jurisdiction upon the courts of this state. A contrary finding would tend to defeat the legislative purpose of protecting the rights of the citizens of Wyoming.

We hold, then, that subsection (a)(iv) of § 5–4.2, W.S.1957, 1975 Cum.Supp., was intended to and does include the kind of service and activity undertaken by the appellee corporations. We further conclude that state jurisdiction is conferred by this subsection when applied to the facts pertaining to the activities of the appellees and, in the process, the due process clauses of the Federal and State Constitutions are not offended.

For reasons set out herein and under the authorities cited, the judgment of the district court dismissing the complaints against American Granby Company, Billings Pipe and Pump Supply Company and State Stove and Manufacturing Company is reversed.

The trial court is directed to enter an order consistent with this opinion.

Reversed.

THOMAS, Justice, specially concurring, with whom RAPER, Justice, joins.

I agree with the majority of the Court that the district court does have jurisdiction over these several defendants pursuant to § 5–4.2, W.S. I am sure that we all are in accord that that ratiocination is imperative when critical constitutional issues are presented for resolution.

My analysis leads me to the conclusion that in Wyoming it no longer is necessary to consider separately the reach of the statute and the question of constitutional due process. These concepts have been merged in the halls of the legislature which, for the State of Wyoming, has defined those minimum contacts resulting in the power of a Wyoming court to exercise personal jurisdiction in a circumstance involving a tortious injury within our state. In § 5–4.2, W.S., the minimum contacts are described in three alternatives, each of which has been expressed both qualitatively and quantitatively. The doing or soliciting of business in this state is a qualitative contact which quantitatively must occur regularly. Alternatively, engaging in any other course of conduct within this state is a qualitative contact which quantitatively must be persistent. The third alternative, deriving revenue from goods consumed or services used in this state is a qualitative contact which quantitatively must be substantial. In adopting these definitions it will not be presumed that the legislature intended that the act infringe upon constitutional limita-

tions. *Hanson v. Town of Greybull*, 63 Wyo. 467, 183 P.2d 393 (1947).

I am not persuaded that the conclusion of the majority that the legislature intended to "extend state court jurisdiction to the constitutional limit" is correct. Certainly it did intend to augment other bases of jurisdiction, but the nature of the activities described and the adjectives used in the statute might well stop short of the constitutional limits. In this regard I find myself in agreement with the analysis and construction of our statute found in *Pullen v. Hughes*, 481 F.2d 602 (10th Cir. 1973).

The approach that I espouse undoubtedly is mooted by the adoption of Chapter 178, Session Laws of Wyoming, 1977, which repealed the statute presented for construction in this case, and substituted the broadest possible jurisdictional approach. The adoption of that statute, however, serves as some evidence that the legislature was concerned that it had not previously extended jurisdiction to the constitutional limits. See *Payne v. City of Laramie*, Wyo., 398 P.2d 557 (1965). The analysis of jurisdiction found in the majority opinion would be appropriate if the 1977 statute were in question, but in this instance all that needs to be done is to apply the statute, § 5–4.2(a)(iv), W.S. to the facts. If the facts come within the statute then jurisdiction exists within the constitutional limits.

Pursuing that approach American Granby Company in maintaining wholesale contacts in Wyoming to the extent that it does, on this record, qualitatively did solicit business in this state, and quantitatively did that regularly. State Stove and Manufacturing Company, Inc., admitted that it had a dealer in Sheridan, Wyoming, and in this manner it qualitatively did solicit business in this state, and quantitatively it did that regularly. Billings Pipe and Pump Supply Co., qualitatively did derive revenue from goods consumed in Wyoming, and quantitatively that revenue was substantial. Since all three defendants come within the language of the statute I agree that the district court did have jurisdiction over each of them.

I also believe that it is important not to rely upon cases construing § 17–36.104, W.S. and its predecessors in construing and applying our "longarm" statute. Those cases which dealt with the issue of whether a defendant was doing business in Wyoming have only historical and policy connotations so far as the issues of this case are concerned. By the introductory language in § 5–4.2, W.S., it is clear that it is intended to authorize the exercise of personal jurisdiction in situations beyond those in which personal jurisdiction would exist under § 17–36.104, W.S., and for that reason those cases construing § 17–36.104 would not reach to the issues of personal jurisdiction which are encompassed in § 5–4.2. If the defendants were doing business within this state so that § 17–36.104, W.S. could be invoked, there would be no necessity to discuss § 5–4.2, W.S.